IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Gregory Cantu, and Jacqueline Holmes, individually and on behalf of a class of similarly situated individuals,<br><br>　　Plaintiffs,<br><br>Vs.<br><br>TitleMax, Inc., TitleMax Holdings, LLC, TMX Finance LLC, TMX Finance Holdings, Inc., TitleMax of Texas, Inc.<br><br>*Defendants.* | CIVIL ACTION NO.  14-628 |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Gregory Cantu and Jacqueline Holmes, on behalf of themselves and all others similarly situated, allege and aver as follows:

## INTRODUCTION

1. Plaintiffs and the Class members are licensed drivers in the State of Texas.

2. This class action arises out of improper and unlawful actions by the Defendant who knowingly obtained the Plaintiffs' and the Class members' personal information and used such information in violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq*.

## PARTIES

3. Plaintiff Gregory Cantu is an individual who resides in Elmendorf, Bexar County, Texas. Plaintiff's confidential personal information was unlawfully obtained and used by Defendant.

4. Plaintiff Jacqueline Holmes is an individual who resides in Galveston, Galveston County, Texas. Plaintiff's confidential personal information was unlawfully obtained and used by Defendant.

5. Defendant TitleMax of Texas, Inc. is a Delaware corporation, headquartered at 15 Bull Street, Suite 200, Savannah, Georgia 31401, which does substantial business in Texas. It may be served by serving its registered agent The Corporation Trust Company, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

6. Defendant TitleMax Finance Corp. is a Delaware corporation, with its headquarters and principal executive offices located at 15 Bull Street, Suite 200, Savannah, Georgia 31401.

7. Defendant TMX Finance, LLC is a Delaware corporation, with its headquarters and principal executive offices located at 15 Bull Street, Suite 200, Savannah, Georgia 31401,

8. Defendant TitleMax Holdings, LLC is a Delaware corporation, with its headquarters and principal executive offices located at 15 Bull Street, Suite 200, Savannah, Georgia 31401.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action and all the Defendants pursuant to 28 U.S.C. § 1331 in that this action arises under statutes of the United States, specifically the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq*. The DPPA specifically authorizes this Court to exercise jurisdiction.

10. This Court has jurisdiction over Defendants because Defendants do a substantial amount of business in Texas and engaged in conduct in violation of the DPPA in Texas.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## DEFENDANTS

12.     Although the TitleMax family of companies named as Defendants herein (referred to collectively as "TitleMax") may be registered as separate companies, in reality they all operate together as a single entity under the joint control of Tracy Young, without any separation.

13.     The TitleMax family of companies includes:  (1) TitleMax Finance Corp., (2) TMX Finance LLC, (3) TMX Finance Holdings Inc., (4) TitleMax Holdings, LLC, (5) TMXA, LLC, (6) TMX Credit, Inc., (7) TMX Investments, LLC., (8) TitleMax Funding, Inc., (9) TitleMax Management Services, Inc., (10) TitleMax Construction, LLC, and (11) TitleMax of Texas, Inc.

14.     TitleMax has multiple wholly-owned subsidiaries set up in various states (including TitleMax of Alabama, Inc.; TitleMax of Arizona, Inc.; TitleMax of Georgia, Inc.; TitleMax of Illinois, Inc.; TitleMax of Mississippi, Inc.; TitleMax of Missouri, Inc.; TitleMax of Nevada, Inc.; TitleMax of S. Carolina, Inc.; TitleMax of Tennessee, Inc.; TitleMax of Texas, Inc.; and TitleMax of Virginia, Inc.).

15.     Despite these multiple subsidiaries, TitleMax operates as a single entity, under the control of Tracy Young.  There is no meaningful division or separation between the various entities within the TitleMax family of companies.

16.     All TitleMax stores, regardless of whether they may be owed by any particular subsidiary are operated pursuant to a company-wide risk management system supported by district and regional managers all under the same central leadership of Mr. Young.

17. Tracy Young is the founder, Chairman of the Board, Chief Executive Officer, President and the sole beneficial owner of TMX Finance LLC's parent holding company, TMX Finance Holdings Inc., as well as all other TitleMax companies. He is also the CFO and the Secretary.

18. Mr. Young has the ability to control substantially all matters of significance to all TitleMax companies, including the strategic direction of their business; the election and removal of their managers; the appointment and removal of their officers; the approval or rejection of a sale, merger, consolidation or other business combination; the issuances of additional equity or debt securities; amendments of its organizational documents; and the entering into of related party transactions and the dissolution and liquidation.

19. TMX Finance LLC's principal corporate office is located at 15 Bull Street, Suite 200, Savannah, Georgia 31401. This is the same address listed by the Texas Secretary of State's records for TitleMax of Texas. Inc., and the same address listed by the Georgia Secretary of State for TitleMax of Georgia, Inc.

20. TitleMax has approximately 1,035 company-owned stores in 12 states (Alabama, Arizona, Florida, Georgia, Illinois, Mississippi, Missouri, Nevada, South Carolina, Tennessee, Texas, and Virginia).

21. It has 470,000 customers and $577.2 million in title loans receivable, and is the largest automobile title lender in the United States based on title loans receivable, principally operating under two brands: TitleMax and TitleBucks.

22. The marketing efforts of TitleMax, including the marketing that violated the DPPA at issue in this case, was directed from the top, with no individual decisions made by any of the subsidiaries.

## GENERAL ALLEGATIONS

23. TitleMax provides title loans to consumers from its locations in Texas and eleven other states.

24. Beginning in the summer of 2012, Defendant began engaging in a pattern of accessing state motor vehicle records to obtain information about consumers who had previously obtained title loans from other companies for purposes of marketing its services to these potential customers.

25. After obtaining this information, Defendant used the information to contact Plaintiffs and other Class members for purposes of soliciting future business. Neither Plaintiffs nor any of the Class members consented to such contact or solicitation.

26. By obtaining this information for purposes of soliciting new customers, TitleMax violated the Drivers Privacy Protection Act ("DPPA").

27. The DPPA lists permissible uses for obtaining information from State Vehicle Records. 18 U.S.C. 2721(b), which do not include solicitation of new customers.

28. TitleMax is in the business of making title loans to consumers and obtained the information from the State Vehicle Records for the sole purpose of soliciting new title loan customers in violation of the DPPA.

29. TitleMax does not engage in any business which could possibly implicate any of the permissible purposes listed in the statute and thus cannot claim to have obtained the information for any permissible purpose.

30. Defendants obtained these State Vehicle Records either directly from the State records or from third parties, including DataTrax and PublicData.com.

31. Defendants knew they were obtaining this information illegally. Before accessing State Vehicle Records, Defendants had to falsely certify that they were using the information for a permissible purpose.

32. For example, DataTrax's agreement, required that its customers using the database,

> represents, certifies and warrants to DataTrax that it is aware of and familiar with the statutes, rules and regulations . . . that govern the use of the Motor Vehicle Title and Registration Database ('VTR'), and that the release and use of personal data contained in the VTR is restricted or prohibited in many cases. In particular, VTR and related data *may NOT be used for marketing, advertising, direct mail, sales solicitation,* or promotional purposes of any kind.

33. DataTrax's agreement required its users to acknowledge reading and understanding this agreement before obtaining information from DataTrax.

34. PublicData.com has similar warnings for its users, as do States and other third-party providers of State Vehicle Records.

35. Accordingly TitleMax cannot claim it was unaware that it was illegally obtaining the information.

## CLASS ACTION ALLEGATIONS

36. This action is properly brought as a class action pursuant to Fed. R. Civ. P. 23. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, as representative of the following class:

> All persons in the United States whose name and address were obtained by Defendant from a motor vehicle record (either directly from a State department of motor vehicles or through resale or redisclosure by a third party).

Alternatively, Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, as representative of the following class:

> All persons in the United States whose name and address were obtained by Defendant from a Texas motor vehicle record (either directly from a State department of motor vehicles or through resale or redisclosure by a third party).

Excluded from the Class are (1) any officer, agent or employee of Defendants or family members thereof; and/or (2) any of the undersigned attorneys or any member of the undersigned attorneys' immediate families.

37. The members of the Class are capable of being readily ascertained from the information and records in the possession or control of Defendants.

38. The Class members are so numerous that individual joinder of all members is impractical.

39. Defendant obtained the personal information of thousands of Texas residents (including Plaintiffs) from "State Vehicle Records" (defined by statute as records maintained by the State pertaining to motor vehicle operator's permits, motor vehicle titles, motor vehicle registrations, and state-issued identification cards).

40. Upon information and belief, Defendants also obtained the personal information of thousands of persons from State Vehicle Records in the other states in which Defendants operate.

41. There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual members of the Class, and, in fact, the wrongs suffered and remedies sought by Plaintiffs and the other members of the Class are premised upon an unlawful scheme participated in by Defendant. The principal common issues include, but are not limited to the following:

7

    a.    Whether the actions taken by the employees and agents of TitleMax in obtaining information from State Vehicle Records violated the DPPA;

    b.    Whether Plaintiffs and Class members are entitled to liquidated damages as provided by statute;

    c.    Whether TitleMax acted with willful or reckless disregard of the law;

    d.    The amount of punitive damages to be awarded due to TitleMax's willful and reckless disregard of the law; and

    e.    The amount of reasonable attorneys' fees and other litigation costs reasonably incurred.

42. Plaintiffs' claims are typical of those of the Class and are based on the same legal and factual theories.

43. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have been subject to the same unlawful acts as the rest of the Class members and are ready, willing and able to serve as Class representatives. Moreover, Plaintiffs' counsel are experienced in handling complex litigation, and have extensive class action experience and a long track record of successful prosecution of class action cases. Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

44. Certification of a Class under Fed. R. Civ. P. 23(b)(3) is appropriate in that Plaintiffs and the Class members seek liquidated monetary damages, common questions predominate over any individual questions, and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort and expense will be

fostered and uniformity of decisions will be ensured. Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against TitleMax.

45. Alternatively, certification of a class is appropriate under Fed. R. Civ. P. 23(b)(1) in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for TitleMax or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

46. Alternatively, certification of a class is appropriate under Fed. R. Civ. P. 23(b)(2) because the parties opposing the Class have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate respecting the Class as a whole.

**CAUSE OF ACTION**
**(Improperly Obtaining and Using Personal Information in Violation of the DPPA)**

47. Plaintiffs incorporate paragraphs 1-46 as though fully set forth herein.

48. The DPPA, 18 U.S.C. § 2722, prohibits any person from knowingly obtaining or disclosing personal information, from a motor vehicle record, for any use not permitted under section 2721(b).

49. 18 U.S.C. 2724(a) provides that a person who knowingly obtains or uses personal information from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains.

50. 18 U.S.C. 2721(b) does not permit use of personal information for surveys, marketing or solicitation unless the State has obtained the express consent of the person to whom such information pertains.

51. In the present case, Defendant obtained and used personal information of Plaintiffs and Class members for the impermissible purpose of solicitation without express consent.

52. "Personal information" is defined in the DPPA, specifically 18 U.S.C. § 2725(3) as follows:

> [I]nformation that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

53. Defendant, through its agents and employees, improperly obtained and improperly used Plaintiffs' and the Class members' personal information for solicitation.

54. The Defendant was not acting pursuant to any exception and did not have express or written consent of Plaintiffs or Class members. Therefore, Defendant violated the provisions of the DPPA.

55. Defendant was aware that its actions constituted an invasion of privacy in violation of the DPPA. Defendant committed these actions with willful and reckless disregard of the law.

## JURY DEMAND

56. Plaintiffs demand trial by jury.

## PRAYER FOR DAMAGES

**WHEREFORE,** Plaintiffs, on behalf of themselves and all members of the Class, respectfully prays for judgment against the Defendants as follows:

a) For an order certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23 and appointing Plaintiffs and their counsel, to represent the Class;

b) For a declaration that the Defendants' actions violated the Federal Driver's Privacy Protection Act;

c) For all statutory damages, penalties, and remedies available for the Defendants' violations of the Federal Driver's Privacy Protection Act;

d) For an award to Plaintiffs and the Class of their costs and expenses of this action pursuant to the DPPA;

e) For an award of punitive damages since Defendant's conduct evidences a willful and reckless disregard of the law;

f) For an award to Plaintiffs and the Class of their reasonable attorneys' fees pursuant to the DPPA; and

g) For such other and further relief as the Court may deem necessary and proper.

Dated: July 11, 2014

        Respectfully submitted,

By:  /s/ Cory S. Fein
Michael A. Caddell (Texas Bar No. 03576700)
Cory S. Fein (Texas Bar No. 06879450)
csf@caddellchapman.com
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906
Email:  csf@caddellchapman.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
Les J. Strieber III (Texas Bar No. 19398000)
**DAVIS, CEDILLO & MENDOZA, INC.**
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone:  (210) 822-6666
Facsimile:  (210) 822-1151
Email:  lstrieber@lawdcm.com

Michael E. Pierce (Texas Bar No. 24039117)
michael@piercechapman.com
**PIERCE CHAPMAN PLLC**
3701 Kirby Dr., Suite 760
Houston, TX 77098
Telephone:  (832) 690-7000
Facsimile:  (832) 575-4840

**ATTORNEYS FOR PLAINTIFF**