UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GREGORY CANTU and <br> JACQUELINE HOLMES, <br><br> Plaintiffs, <br><br> v. <br><br> TITLEMAX, INC., TITLEMAX <br> HOLDINGS, LLC, TMX FINANCE, <br> LLC, TMX FINANCE HOLDINGS, <br> INC., TITLEMAX OF TEXAS, INC., <br> and TITLEMAX FINANCE CORP., <br><br> Defendants. | SA-14-CA-628-RP (HJB) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Robert L. Pitman, United States District Judge:**

This Report and Recommendation concerns two Motions to Dismiss for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) filed by Defendants TitleMax Finance Corp. ("TitleMax Finance") and TMX Finance, LLC F/K/A TitleMax Holdings, LLC ("TMX Finance"). (Docket Entries 6, 7). Dispositive pretrial matters have been referred to the undersigned for ruling pursuant to Western District of Texas Local Rule CV-72 and Appendix C. (*See* Docket Entry 31.) For the reasons set out below, I recommend that TitleMax Finance's Motion (Docket Entry 6) be **GRANTED**, and TMX Finance's Motion (Docket Entry 7) be **DENIED**.

I.     **Jurisdiction.**

Plaintiffs bring a class action complaint under the Driver's Privacy Protection Act ("DPPA), 18 U.S.C. §§ 2721, *et seq.* (Docket Entry 1). This Court has jurisdiction over federal questions

pursuant to 28 U.S.C. § 1331. The undersigned is authorized to issue this report and recommendation by 28 U.S.C. § 636(b).

## II. Background.

Plaintiffs allege that, beginning in the summer of 2012, Defendants began engaging in a pattern of accessing state motor vehicle records to obtain information about consumers who had previously obtained car title loans from other companies for purposes of marketing its own title loan services to these potential customers. (Docket Entry 1, at 5.) Defendants allegedly used the information to contact Plaintiffs and other putative class members for purposes of soliciting future business. (*Id.*) By obtaining this information for purposes of soliciting new customers, Plaintiffs contend that Defendants violated the DPPA, which limits the permissible uses for obtaining information from state vehicle records. *See* 18 U.S.C. 2721(b). (*Id.*)

Plaintiffs' complaint primarily targets Defendant TitleMax of Texas, Inc. ("TitleMax of Texas"), which they allege does business in the Western District of Texas.[1] Plaintiffs' claim, however, that other TitleMax entities are also liable, including TitleMax Finance and TMX Finance. According to Plaintiffs' complaint, although the TitleMax family of companies may be registered as separate companies, "in reality they all operate together as a single entity under the joint control of Tracy Young, without any separation," through multiple wholly-owned subsidiaries set up in various states (including TitleMax of Texas). (Docket Entry 1, at 2.) Plaintiffs claim that there is no meaningful division or separation between the various entities within the TitleMax family of companies, and that all TitleMax stores, regardless of whether they may be owned by any particular

---

[1] TitleMax of Texas has answered Plaintiffs' complaint, denying liability but admitting that it does business in Texas and declining to challenge this Court's jurisdiction over it. (*See* Docket Entry 8.)

2

subsidiary, are operated pursuant to a company-wide risk management system supported by district and regional managers all under the central leadership of Young, who is the founder, Chairman of the Board, Chief Executive Officer, President and the sole beneficial owner of TMX Finance, "as well as all other TitleMax companies." (*Id.* at 2–3.)

TitleMax Finance and TMX Finance, represented by the same counsel as TitleMax of Texas, have each moved to dismiss the charges against them for lack or personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2) (authorizing such motions). TitleMax Finance asserts that it is a Delaware corporation formed in conjunction with a bond offering, and that it has no employees or operating assets and has never conducted any consumer business activities anywhere, let alone in Texas. (Docket Entry 6, at 2.) TMX Finance alleges that it did not commit any of the acts in Texas giving rise to Plaintiffs' complaint, that its principal place of business is Georgia, and that it lacks the minimum contacts with Texas required to justify the exercise of personal jurisdiction over a nonresident. (Docket Entry 7, at 2.)[2]

Plaintiffs responded to the motion filed by TMX Finance (Docket Entry 50), but not the motion filed by TitleMax Finance. Based on the assertion that TitleMax Finance does not do business anywhere, Plaintiffs do not oppose dismissal of their claims against that entity. (*Id.* at 1 n.1.)

### III. Applicable Law.

If a party raises the defense of lack of personal jurisdiction, the non-moving party bears the burden of proving personal jurisdiction. *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th

---

[2] Proceedings on the motions to dismiss have been delayed while the parties have engaged in limited discovery regarding the personal jurisdiction issue. This discovery is ongoing, and is addressed by a separate order entered today.

Cir. 2006). Although the non-moving party bears the burden, "[w]hen a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the nonmoving party need only make a *prima facie* showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir.1999); *see also Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (explaining that we "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.").

### A. *Due Process and Personal Jurisdiction.*

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *See* FED. RULE CIV. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Additionally, a federal court may only exercise personal jurisdiction over a nonresident defendant if "the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). In this instance, the state-law and due-process inquiries merge into one, since Texas law permits the exercise of personal jurisdiction to the limits of due process. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

On issues of personal jurisdiction, due process is satisfied if the "nonresident defendant has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999) (brackets in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (internal citation omitted).

A district court may assert either general or specific jurisdiction over a party. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867–68 (5th Cir. 2001). General jurisdiction is established where the defendant has "continuous and systematic" contacts with the forum state. *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). For corporations, it will be rare for such jurisdiction to be available in states other than the state of incorporation and the principal place of business. *Daimler AG*, 134 S. Ct. at 760–61.

Even when the defendant lacks the "continuous and systematic contacts" to support general jurisdiction, specific jurisdiction may still be established if (1) the defendant has "purposefully directed his activities at residents of the forum," and (2) that the plaintiffs' alleged injury "arise[s] out of or relate[s]" to the defendant's contacts with the forum state. *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, . . . physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact" for purposes of specific jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

If a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003).

5

"To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Burger King Corp.*, 471 U.S. at 477). In determining whether jurisdiction is unfair and unreasonable, a court may consider, when relevant, "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759–60.

### B. *Agency and Personal Jurisdiction.*

The Fifth Circuit has recognized that the contacts of an alter ego or agent may be imputed to a parent corporation for purposes of personal jurisdiction. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). As the Supreme Court has explained, "[a] corporation is a distinct legal entity that can act only through its agents. . . . As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG*, 134 S. Ct. at 759 n.13 (citations omitted).

In considering issues of personal jurisdiction, however, the presumption is in favor of corporate separateness. *Dickson Marine Inc.*, 179 F.3d at 338. Accordingly, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) (quoting *Hargrave*, 710 F.2d at 1159); *see also Dickson Marine Inc.*, 179 F.3d at 338. In fact, the Fifth Circuit does not even view 100 percent ownership, shared officers and directors, and financing

arrangements, by themselves, to be sufficient to establish an alter ego relationship. *Alpine View Co. Ltd.*, 205 F.3d at 218. Instead, the plaintiff must present *prima facie* evidence that the parent corporation so controls the subsidiary that the activities of the subsidiary are attributable to the parent corporation for jurisdictional purposes. *Id.*; *see also Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (stating that subsidiary is alter ego of parent corporation when it is "organized or operated as a mere tool or business conduit"). Such proof requires "something beyond the subsidiary's mere presence within the bosom of the corporate family." *Dickson Marine Inc.*, 179 F.3d at 338 (internal citations omitted). "There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego." *Id.*

Factors set out by the Fifth Circuit for the consideration of whether a parent corporation is amenable to personal jurisdiction based on the actions of a subsidiary include: (1) whether the parent corporation owns all or a significant portion of the subsidiary's stock; (2) whether the two corporations have separate headquarters; (3) whether they have common officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems and bank accounts; (6) whether the assets of the corporations are commingled; (7) whether the parent corporation exercises complete authority over general policy or daily operations; (8) whether the two entities share common business departments; (9) whether they have consolidated financial statements and tax returns; (10) whether the parent corporation finances the subsidiary or pays salaries and expenses; (11) whether the subsidiary is undercapitalized; (12) whether the subsidiary has any business other than that from the parent corporation; (13) whether the parent corporation uses the subsidiary's property as the parent's own; and (14) whether daily operations are separate. *Hargrave*, 710 F.2d 1160; *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 208–09 (5th

7

Cir. 1996). The Court's decision must be based on the totality of circumstances. *Gundle Lining Constr. Corp.*, 85 F.3d at 209.

**IV. Analysis.**

In support of its motion to dismiss, TitleMax Finance presents affidavit evidence from its vice-president Christopher Wall. (Docket Entry 7, at 9–10.) Wall's affidavit states, among other things, that TMX Finance is a separate and distinct entity, incorporated in Delaware and having its principal place of business in Georgia; that it observes corporate formalities, has its own employees, and maintains its own books and bank accounts; that it has never engaged in providing any consumer product or service in Texas; that it not licensed or otherwise authorized to do business in Texas; that it has never paid franchise taxes or any other taxes to Texas, or owned any real property there; and that is has no Texas agent for service of process in Texas. (*Id.*) Wall also asserts that "TMX Finance has never had any involvement in any tortious or illegal activity in Texas," and "has never accessed any driving records of Texas residents." (*Id.* at 10.)

In response, Plaintiffs provide a variety of contravening evidence, including, among other things:

(1) <u>TMX Finance's Annual Report to the Securities and Exchange Commission</u>. (Docket Entry 50-5.) This report provides contradicting evidence. It states generally that TMX Finance exists "solely as a holding company" (Docket Entry 50-5, at 5); however, it also states that the company[3] operates to provide title loans to customers with limited access to credit, that it "operate[s] under two brands," one of which is

---

[3] Although not controlling, the report uses "TMX Finance," the "Company," "we," "us" "our," and similar terms to "represent TMX Finance and its consolidated affiliates." (*Id.* at 5.)

8

TitleMax (*id.* at 6). More pertinent to the issue before the Court, the report states that TMX Finance "conduct[s] business in Texas and certain other states through wholly-owned subsidiaries." (*Id.* at 8.) It notes that it operates in compliance with city ordinances in Austin, Dallas, El Paso and San Antonio, but that its subsidiary TitleMax of Texas is challenging the legality of two of the ordinances. (*Id.* at 11.) TMX Finance also includes all of the title loans its subsidiaries have provided as accounts receivable in a "Consolidating Balance Sheet" (with receivables totaling more than $577 million). (*Id.* at 65.)

(2) <u>Information about Otto Bielss</u>. (Docket Entries 50-6, 50-9.) Bielss is Chief Operating Officer of TMX Finance. (Docket Entry 50-6, at 1.)[4] His "Linked In" webpage lists his business as "retail" in the "Dallas-Ft. Worth Area." (*Id.*) According to an affidavit filed in another case, a former Houston district manager of TitleMax of Texas reported to a regional manager who in turn reported directly to Bielss. (Docket Entry 50-10, at 3.) Bielss reported directly to Tracy Young, CEO of both TitleMax of Texas and TMX Finance. (*Id.*; *see also* Docket Entry 50-7, at 2.) Another affidavit, from a former Dallas area regional manager of TitleMax of Texas, stated that the regional managers reported to Bielss, and that Bielss and other corporate operations employees participated in monthly conference calls concerning operations and performance of individual Texas stores. (Docket

---

[4] The SEC Annual Report lists him as "Senior Vice President of Operations." (Docket Entry 50-5, at 74.)

9

Entry 50-11, at 4.) This regional manager opined that unattainable performance goals set during these conference calls led TitleMax of Texas employees to engage in "improper practices" to boost sales. (*Id.* at 5.)

    (3)    <u>Information about other Texas employment positions</u>. Plaintiffs submit a page from an employment website, "Simply Hired," which lists the "TMX Finance family of companies" as offering numerous jobs in Texas. (Docket Entries 50-16 through 50-18.)

    (4)    <u>Information about TMX Finance's corporate offices</u>.  Another TMX Finance document, apparently from its "careers" website, indicates that Dallas is TMX Finance's "regional corporate office and corporate contact center." (Docket Entry 50-20, at 3.) Plaintiffs also submit a document called "TMX Finance Careers" which states that TMX Finance has "over 15 departments with state-of-the-art corporate offices located in Savannah and Dallas." (Docket Entry 50-19, at 5.)

Considered in its totality, and with conflicts construed in Plaintiffs' favor, the above evidence is sufficient to present a *prima facie* case that this Court has personal jurisdiction over TMX Finance.[5] Although mere association with, or even ownership of, TitleMax of Texas would not be sufficient, Plaintiffs have presented evidence that TMX Finance had significant control of the day-to-day operations of TitleMax of Texas, including coordinating its business operations and even its legal activities in Texas courts.  This evidence, combined with (1) other evidence of the close

---

[5] TMX Finance disputes much of this evidence in its reply (Docket Entry 53); at this stage in the proceedings, however, such disputes must be resolved in Plaintiff's favor.

association of the two companies, (2) the placement of a regional corporate office and chief operations officer in Texas, and (3) ongoing involvement with the stores making loans in Texas, all make an exercise of specific personal jurisdiction appropriate. As the Fifth Circuit has repeatedly made clear, defendants who purposefully engage in business within the forum state "knowingly benefit[ ] from the availability of a particular state's market," and they thus may reasonably foresee that claims will arise from their business transactions. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x. 338, 348 (5th Cir. 2014) (brackets in original) (quoting *Luv N' care, Ltd.*, 438 F.3d at 470). If they engage in such business in this state, they "can reasonably expect to be haled into a Texas court." *Dontos*, 582 F.3d at 348.[6]

The same evidence that establishes sufficient "minimum contacts" between TMX Finance and Texas also defeats any argument by TMX Finance that this Court's exercise of jurisdiction would be unreasonable. *Wien Air Alaska, Inc.*, 195 F.3d at 215. It is not unreasonable for a company with corporate offices in Texas, which offers multiple corporate employment positions in Texas, and whose chief operations officer participates in the management of Texas stores and whose employees are alleged to have committed the violations giving rise to the lawsuit in Texas, should be called upon to answer that suit in this State.

For all these reasons, reviewing the totality of the evidence and resolving conflicts in Plaintiff's favor, TMX Finance's motion should be denied.[7]

---

[6] Indeed, Plaintiffs note that TMX Finance has been sued in Texas state court in a related case, but has not contested jurisdiction. (See Docket Entry 50-2.)

[7] Of course, even though Plaintiffs have established a *prima facie* case of specific personal jurisdiction, this does not "foreclose [any] defendant from holding [the Plaintiffs] to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009).

V.   **Conclusion.**

For the reasons set out above, I recommend that the Motion to Dismiss for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) filed by Defendant TitleMax Finance Corp. (Docket Entry 6) be **GRANTED**, and that the Motion to Dismiss for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) filed by Defendant TMX Finance, LLC F/K/A TitleMax Holdings, LLC (Docket Entry 7) be **DENIED**.

VI.   **Instructions for Service and Notice of Right to Object/Appeal.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), any party who desires to object to this Report must file with the District Clerk and serve on all parties and the Magistrate Judge written Objections to the Report and Recommendation **within fourteen (14) days after being served with a copy,** unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a de novo determination by the District Court. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Acuña v. Brown & Root, Inc.,*

200 F.3d 335, 340 (5th Cir. 2000). Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on June 17, 2015.

_____
Henry J. Bemporad
United States Magistrate Judge