Case 5:14-cv-00628-RP-HJB   Document 68   Filed 07/15/15   Page 1 of 17

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Gregory Cantu, and Jacqueline Holmes, individually and on behalf of a class of similarly situated individuals,<br><br>　　Plaintiffs,<br><br>Vs.<br><br>TitleMax, Inc., TitleMax Holdings, LLC, TMX Finance LLC, TMX Finance Holdings, Inc., TitleMax of Texas, Inc.<br><br>　　*Defendants.* | § § § § § § § § § § § § § § §　CASE NO. 5:14-cv-00628-RP-HJB |

**PLAINTIFFS' RESPONSE TO
OJECTION TO MAGISTRATE JUDGE'S JUNE 17, 2015 REPORT REGARDING
JURISDICITON OVER TMX FINANCE**

Plaintiffs file this response to Defendant TMX Finance LLC f/k/a TitleMax Holdings, LLC ("TMX")'s objection to the Report and Recommendation of United States Magistrate Judge Bemporad [Doc. 54] (the "Report"), recommending that the Court deny TMX's Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) [Doc. 7] (the "Motion to Dismiss"). Plaintiffs respectfully request that the Court overrule the objection and adopt the Report. In support, Plaintiffs state as follows:

I.　**SUMMARY OF RESPONSE**

This is a class action brought by Plaintiffs individually and on behalf of all similarly situated persons (the "Class Members") whose information was illegally

1

obtained from state motor vehicle records by Defendants in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721, et seq. Defendants are a group of companies known collectively as "TitleMax," which are owned and operated 100% by Tracy Young, via a number of corporations established by Mr. Young.

One of Tracy Young's companies, TMX Finance, asserts that it is not subject to personal jurisdiction in Texas, arguing that it lacks sufficient continuous and systematic contacts with Texas, it is separate and distinct from TitleMax of Texas, Inc. ("TitleMax of Texas"), and was not involved in the conduct at issue in this litigation. To the contrary, Plaintiffs demonstrated that the facts easily justify Texas jurisdiction over TMX Finance under multiple theories. TMX Finance (1) had extensive activities in Texas including direct involvement of its employees and agents in activities related to the issues in this lawsuit, (2) maintains a continuous and systematic presence in Texas, and (3) lacks separation between it and its Texas subsidiaries, more than sufficing to give this Court jurisdiction over TMX Finance under the theories of general jurisdiction, specific jurisdiction, agency and/or alter ego.

The Magistrate Judge agreed with Plaintiffs and denied TMX Finance's Motion. [Doc. 54.] The mountain of competent evidence of TMX Finance's presence in Texas, make this an easy decision and TMX Finance's objections should be denied.

## II. LEGAL STANDARD

The Report [Doc. 54 at 4] correctly recites the applicable legal standard.

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, however, the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor.

2

*Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625, (5th Cir. 1999) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999)). In the present case, there was no evidentiary hearing. Accordingly, Plaintiffs need only make a prima facie showing, Plaintiffs' allegations must be accepted as true, and any factual disputes must be resolved in Plaintiffs' favor.

### III.  ARGUMENT

#### A.  Plaintiffs Sufficiently Made Prima Facie Case that TMX Finance is Subject to Jurisdiction in Texas as the Alter Ego of TitleMax of Texas

Plaintiffs provided ample support for their position that TMX Finance is subject to Texas jurisdiction because TitleMax of Texas is its alter ego. [*See* Doc. 50 at pp. 9-15.] Defendant fails to refute this evidence, instead arguing that jurisdiction under the alter ego doctrine is impossible because of eight facts that it claims are "uncontroverted." [Doc. 61 at 2, 10-11.]

##### 1.  "Uncontroverted" Facts (1) and (2) Do Not Negate Alter Ego

The first two of these eight "uncontroverted" facts alleged by TMX are that TMX (1) is a separate and distinct entity; and (2) observes corporate formalities. (*Id.* at 2, 10.) These are conclusions, not facts, and they were vigorously controverted by evidence submitted by Plaintiff and cited favorably by the Report.

TMX's support for these alleged uncontroverted facts is limited to two conclusory, vague and unsupported sentences in a declaration signed by Christopher Kelly Wall: "TMX Finance is a separate and distinct entity. Among other things, it observes corporate formalities, has its own employees, and maintains its own books and bank accounts." [Doc. 7 at ¶13]. TMX never describes what corporate formalities it follows or how it follows them. In fact, the only actual evidence presented to the Court was that

3

Case 5:14-cv-00628-RP-HJB   Document 68   Filed 07/15/15   Page 4 of 17

TMX and all of its various subsidiaries are under the complete and unrestrained control of one person, Tracy Young, with little or no corporate formalities observed. [Doc. 50 at pp. 9-15.]

In *Vista v. USPLabs,* LLC, Case No. 14-cv-378, 2014 U.S. Dist. LEXIS 154817 at *10 (N.D.Cal. Oct. 30, 2014), the court found that a defendant's declaration that all corporate formalities were followed was conclusory, broad and vague and failed to controvert factual allegations that corporations were alter egos. The court found that defendants could have easily submitted declarations regarding the details of the alleged corporate formalities, such as the existence of shareholder meetings and bylaws, but did not do so. *Id.* "The court is disinclined to treat such a broad, vague statement [that corporate formalities were followed] as controverting Plaintiff's factual allegations so as to require further evidence from Plaintiff at this stage." *Id.*

> Had the Moving Defendants chosen to place Plaintiff's factual allegations at issue through declarations, further jurisdictional discovery might well have been required to decide this motion. But being faced with largely uncontroverted factual allegations at this stage in the dispute, the court accepts Plaintiff's allegations as true for purposes of this motion to dismiss. The court concludes that these allegations are sufficient to establish personal jurisdiction over Defendants . . . at this stage in the litigation. Of course, Plaintiff will be required to prove personal jurisdiction at trial.

*Id.* at **11-12. This echoes the Report's finding in the present case. (*See* Doc. 54 at 11, n.7, noting that Plaintiffs will still have to meet their ultimate burden at trial of establishing jurisdictional facts by a preponderance of evidence.) *See also New York v. Exxon Corp.*, 112 B.R. 540, 553 (S.D.N.Y 1990) ("conclusory statements in the affidavits . . . to the effect that 'corporate formalities were always observed,' . . . are plainly self-serving and not sufficient to contradict [facts supporting alter ego]".)

As stated in *Vista* and *New York v. Exxon*, establishing the observation of

4

corporate formalities requires more than declaring, "we observe corporate formalities"; it requires specific description of which corporate formalities a company observes and how it observes them. *See e.g., Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, 2009 U.S. Dist. LEXIS 54670 at **51-52, 2009 WL 1803458, *15 (S.D.N.Y. June 23, 2009) (finding failure to maintain corporate formalities where there was no evidence of electing directors, appointing officers, holding annual meetings, or acting by corporate resolution).

By contrast, in the cases cited by TMX where alter ego was not found, the defendants generally provided substantial evidence of how they observed corporate formalities. In *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983), the defendant demonstrated that the parent and subsidiary shared no common officers and never had more than one common director; the defendant further established that the companies maintained separate accounting and payroll systems, insurance contracts, budgets, and financial records, and that they filed separate tax returns and did not commingle assets. *Id.* In *Alpine View Co. Ltd. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000), the parent and subsidiary did not move funds freely between the companies and in fact the parent charged interest on loans made to the subsidiary and the parent did not otherwise finance the subsidiary. In *E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp.2d 499, 533 (S.D. Tex. 2012), no evidence was presented to establish that the parent had control over the subsidiary other than two vague conversations alluding that the owner managed some daily activities between both; the defendant established that the owner did not exercise control over the day-to-day operations. In, *Global 360, Inc. v. Spittin' Image Software, Inc.*, Case No. 04-CV-1857, 2005 WL 625493, at *9

(N.D. Tex. Mar. 17, 2005), the plaintiff failed to establish that control was closely tied through domination of finances, policies, and practices of the corporation. By contrast, TMX's corporate filings admit that Tracy Young has complete control over all companies and their subsidiaries. [Doc. 50 at 11-12.]

The facts in the present case are much more similar to those in *Garcia v. Global Dev. Strategies, Inc.*, 2014 U.S. Dist. LEXIS 62813, \*\*18-19, 2014 WL 1805374 (W.D. Tex. May 7, 2014). [*See* Doc. 50 at 12-15.]

### 2.   "Uncontroverted" Facts (3) and (4) Do Not Negate Alter Ego

The next two "uncontroverted facts'" cited by Defendant are that it: (3) has its own employees, and (4) maintains its own books and bank accounts. [Doc. 61 at 2, 10-11.] Again, TMX provides no support for these alleged uncontroverted facts beyond the conclusory, unsupported single sentence in Mr. Wall's declaration: "Among other things, it observes corporate formalities, has its own employees, and maintains its own books and bank accounts." [Doc. 7 at p. 10, ¶13].

Mr. Wall's statements are scant evidence that TMX Finance and TitleMax of Texas truly operate as separate entities. Regardless of whether there are separate bank accounts in the names of TMX and TitleMax of Texas (and TMX has produced no actual evidence of such), all bank accounts would be under the complete and unlimited control of Tracy Young; TitleMax has no directors or officers other than Tracy Young, who is the CEO and President of both TMX Finance and TitleMax of Texas. [Doc. 50-8 at 6-7.]

Wall's statement that TMX has its own employees, while perhaps true for some lower level employees, is undercut by its discovery responses and SEC filings wherein it admits that its top executives serve in the same role at TMX and its subsidiaries. [Doc.

6

50 at 6.] Not only is Tracy Young the only officer and the only director of TitleMax of Texas, Otto Bielss is the Senior Vice President of Operations of both TMX Finance and TitleMax of Texas. [Doc. 50-5 at p. 75.] In fact, the only factual evidence before the Court on the issue is that TitleMax's top executives (including Otto Bielss and Tracy Young) simultaneously function as employees of the various alter egos that make up TitleMax, including TMX Finance and TitleMax of Texas. The fact that TitleMax of Texas may have some lower level employees (who are still under the complete and unrestricted control of Young and Bielss) does not refute Plaintiffs' alter ego argument.

### 3.    Final Four "Uncontroverted" Facts Do Not Negate Alter Ego

The final four of these eight allegedly "uncontroverted" facts have no relevance to an alter ego analysis. TMX argues that it (5) has never provided consumer products or services in Texas, (6) has never been licensed or paid taxes in Texas, (7) does not own real property in Texas, and (8) does not have a registered agent for service in Texas. (Doc. 61 at 2, 10-11.)

None of these allegedly uncontroverted facts have any relevance to an alter ego analysis. (*See* Report, Doc. 54 at 7, listing relevant factors.) In fact, each of these facts is what would be expected from a company and subsidiary operating as a single entity. Because TitleMax of Texas and TMX operated as a single entity, it could easily have TitleMax of Texas hold the required licenses, pay the required taxes, maintain an agent for service, and be the named owner of any property. The fact that the single entity chose to have TitleMax of Texas perform these functions does not refute Plaintiffs' alter ego argument in any way.

Case 5:14-cv-00628-RP-HJB   Document 68   Filed 07/15/15   Page 8 of 17

### B. Plaintiffs Sufficiently Made Prima Facie Case that TMX Finance is Subject to Jurisdiction in Texas Due to its Employees' and Agents' Acts in Texas

Defendant argues that "to find that TMX is subject to specific jurisdiction in Texas, the Court had to find that TMX used at least one driving record for an impermissible purpose." [Doc. 61 at 2.] This is false and Defendant cites no case law to support this premise. As recognized by the Report, specific jurisdiction may be established where a defendant purposefully directed its activities at residents of the forum and the alleged injury arises out of or relates to the defendant's contacts with the forum; additionally, a corporation can purposefully avail itself of a forum by directing its agents to take action there. [Doc. 54 at 5-6.] Accordingly, even if no employee of TMX personally accessed a Texas driving record, TMX is still subject to Texas jurisdiction by way of its employees and/or agents actively directing, overseeing, and supervising the Texas operations which included the illegal acts, and setting the policies that resulted in the illegal acts occurring. [See Doc. 50 at 2-3.] [1]

Defendant argues that specific jurisdiction does not exist because, "[i]t is

---

[1] TitleMax of Texas has recently admitted that at least sixteen of its employees illegally accessed Texas motor vehicle for the impermissible purpose of soliciting potential customers. (See Exhibit A to Cory Fein Declaration, Excerpt from TitleMax of Texas's June 17, 2005 Responses to Discovery, Interrogatory Nos. 3-5.) TMX's internal documents reflect that its policy (which governed TitleMax of Texas) was that soliciting potential new customers using state motor vehicle records was an acceptable business practice if the list is obtained records or purchased legally. (See Exhibit B to Cory Fein Declaration, Jennifer Roelle May 3, 2013 email, marked as JURIS 014-15.) This policy, inferring that there is a legal way to solicit potential new customers using state motor vehicle records, specifically permitted the DPPA violations because soliciting potential new customers is always an impermissible purpose under the DPPA, regardless of how the list is obtained. TMX was forced to change its policy as a result of injunctions obtained by LoanStar against TMX in Texas on July 1, 2013 (Exhibit C hereto) and in Georgia on May 28, 2015 [Doc. 50-4].

8

uncontroverted that TMX does not have any purposeful contacts with Texas causing the lawsuit to arise." [Doc. 61 at 1.] This is false. Plaintiffs submitted substantial evidence of Defendant's purposeful contacts with Texas with regard to the illegal use of motor vehicle records at issue in this case, including deposition testimony from a similar case. [Doc. 50 at 6-7.][2] It is uncontroverted that employees of TitleMax of Texas violated the DPPA by accessing driving records for impermissible purposes, and Plaintiffs made a prima facie case that these employees were acting as agents of TMX and/or that TMX was actively supervising and directing these activities in Texas. Bielss was TMX Finance's Senior Vice President of Operations who supervised and managed Texas marketing operations. [Doc. 50 at 7.] These marketing operations, supervised and managed by TMX Finance's top executive in charge of operations, included the illegal conduct at issue in this case.

TitleMax of Texas's privilege log sought to portray Bielss as an employee of TitleMax of Texas (in order to minimize the involvement of TMX Finance in the illegal Texas acts). [Doc. 60 at 3.] However, Mr. Bielss is not listed as management of TitleMax of Texas. [*See* Doc. 50-7, Texas Secretary of State listing of TitleMax of Texas's management, which lists only Tracy Young, in Savannah, Georgia.] Additionally, he was not listed in Defendant's discovery responses as having any role at TitleMax of Texas. (*See* Doc. 50-8, Defendant's Response to Requests for Production).

Documents recently produced by TitleMax of Texas demonstrate that this illegal

---

[2] Plaintiffs cited and attached a pleading from the related *Wellshire Financial* case which cited and attached deposition testimony. [Doc. 50-9.] The deposition transcript excerpts cited and attached to that pleading as Exhibits D, F and G, are attached hereto as Exhibits E, F and G.

9

conduct was not conducted in secret by rogue employees; it was openly reflected in their weekly marketing reports, Weekly Planner / Tracking Sheets, and Marketing Plans. (*See* Declaration of Cory Fein at ¶ 7, and Exhibit D thereto at TMX_Cantu_00191, 192, and 217-224.)³

The Wall Declaration states that TMX "has never had any involvement in any tortious or illegal activity in Texas" and "has never accessed any driving records of Texas residents." [Doc. 7, Wall Decl at ¶¶ 9-10]," but never disclaims its active supervision and direction of employees who did illegally access driving records of Texas residents, nor does it disclaim that those who conducted these illegal acts were agents of TMX.

When TMX Finance's competitor, Select Management Resources (a/k/a LoanStar), accused TMX Finance of improperly soliciting LoanStar's customers by obtaining information from Texas state-maintained motor vehicle records, TMX Finance's Deputy General Counsel, Vin Thomas, responded on behalf of TMX, which he specifically defined in the re line as "TMX Finance LLC." (Doc 30-3.) After falsely denying that the illegal practice was occurring, he demonstrated TMX's control over the Texas agents conducting these activities, stating that TMX (defined to mean TMX Finance LLC) "has reminded all Texas managers of its position on this practice." *Id.* Similarly, the email from Jennifer Roelle (Senior HR Manager of TitleMax of Georgia, Inc.) on May 3, 2013 confirmed that TMX Finance's policy (to be followed by TitleMax of

---

³ Defendant did not produce these documents until after the Magistrate issued his Report, and thus were not part of the Magistrate's consideration. To the extent the Court chooses not to consider them, the Magistrate's Report is more than amply supported by the remainder of the evidence presented.

Texas) is that soliciting competitors' clients using information gathered from searching motor vehicle records is an acceptable business practice if the list is obtained or purchased legally. (*See* Exhibit B, stamped JURIS 014-15.)

### C. Plaintiffs Sufficiently Made Prima Facie Case that TMX Finance is Subject to General Jurisdiction in Texas

The Wall Declaration states that TMX "has never owned any real property located in Texas" [Wall Decl at ¶ 7]," but never denies that one of its two corporate offices is actually located in Texas. [*See* Doc. 50 at 15, citing Doc. 50-19 and 50-20.]

Plaintiffs produced ample documentation, from TMX's own websites and job postings, that Texas is a major base of its operations, second only to Savannah, Georgia. TMX weakly attempts to refute the evidence regarding its presence in Texas by aruging that "TMX Finance" is merely a brand name or trademark (like Blockbuster and Ace Cash Express), and doesn't necessarily refer to "TMX Finance LLC." However, it never directly contradicted Plaintiffs' evidence that TMX Finance LLC operated and hired in Texas for itself, not for TitleMax of Texas. The facts are obvious. For example, TMX Finance advertised for a software development engineer to work at its corporate office in Dallas. [Doc. 50-18.] This was obviously for the parent company; TitleMax of Texas does not even have a website. TitleMax's website makes clear that the brand name and trademark used by all the affiliated companies is "TitleMax," not TMX Finance. [See Doc. 50-21.] Additionally, it is clear that TItleMax has stores in 16 states [Doc. 50-21 at 3], but the Carrollton, Texas location is a corporate office for the parent company (TMX Finance, LLC), not for its Texas subsidiary (TitleMax of Texas). [Doc. 50 at p. 15, citing Doc. 50-16, 50-17, 50-18, 50-19, and 50-20.]

11

### D.     Burden of Defending Case in Texas

The Report correctly describes the burden on Defendant to make a compelling case that the assertion of jurisdiction is unfair and unreasonable. [Doc. 54 at 5-6.] "[O]nce minimum contacts are established, a defendant must present a compelling case that the presence of some consideration would render jurisdiction unreasonable. In fact, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 770 (N.D. Tex. 2012) (citations omitted).

Defendant clearly fell short of making such a compelling case. It cites no case law to support its position and no facts to justify a finding that it should not have to "come to Texas" to defend its involvement in the violation of the DPPA against Texans. [Doc. 50 at 8-9.] See *Hall v. Phenix Investigations, Inc.*, Case No. 3:14-CV-06652014 U.S. Dist. LEXIS 156930, *15-16 (N.D. Tex. Nov. 5, 2014) (finding no undue burden on a defendant from another state because Texas has an interest in protecting persons located here from being subjected to unlawful practices and in providing a remedy for tortious actions directed to the state, and victims have an interest in obtaining convenient and effective relief in the state where they were wronged).

Of course, even the concept that it would have to "come to Texas" to defend the suit is a fiction. TMX Finance's outside and in-house lawyers have already been in Texas litigating this conduct on behalf of TitleMax of Texas (in the present case and in the *Wellshire* Houston case) for years. In fact, TMX Finance is not contesting jurisdiction

in the *Wellshire* case, so it is already in Texas defending itself for the same conduct in that case. [Doc. 50-2.]

### E. Hearsay Objections Raised by Defendant are Misplaced

Defendant's hearsay objections to certain evidence cited by Plaintiffs are misplaced because the Court is permitted to consider hearsay evidence. In *Francis v. API Tech. Servs., LLC,* Case No. 4:13-cv-627, 2014 U.S. Dist. LEXIS 127129, *5 (E.D. Tex. Sept. 11, 2014), the court discounted a hearsay objection by noting that "the court is **not required to rely only on admissible evidence in determining whether jurisdiction exists**. . . . [T]he party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." (emphasis added.) Courts in other jurisdictions similarly permit the consideration of hearsay evidence for purposes of determining personal jurisdiction, provided it bears circumstantial indicia of reliability. *See Bauman v. DaimlerChrysler AG*, No. C-04-00194 RMW, 2005 U.S. Dist. LEXIS 31929, 2005 WL 3157472, at *5 (N.D. Cal. Nov. 22, 2005), *rev'd on other grounds sub nom. Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888-89 (Fed. Cir. 2008) (holding that a district court may consider hearsay evidence when determining if a plaintiff has made a prima facie showing that jurisdiction exists).

Defendant cites an unpublished case for the proposition that, "when contradicted by the defendant's affidavit, hearsay evidence will not defeat a motion to dismiss for want of personal jurisdiction." [Doc. 61 at 8, citing *Cooper v. McDermott Intern., Inc.*, No. 93-2907, 1995 U.S. App. LEXIS 42907, 1995 WL 450209, at *5 (5th Cir. July 6, 1995).] However, the actual quote from the case is: "First, when faced with a motion to dismiss,

13

a plaintiff must make a prima facie showing of jurisdiction through its own affidavits and supporting material. When *directly* contradicted by defendant's affidavit, hearsay evidence will not defeat a motion for dismissal under Rule 12(b)(2)." *Id.* (emphasis added.) Defendant never directly contradicts any of the material supporting Plaintiffs' prima facie case. Defendant complains about Plaintiff's evidence taken from Defendant's websites, Defendant's securities filings, Defendant's employees' LinkedIn pages, and Defendant's job postings, but never attempts to contradict any of this evidence or explain why these sources of information lack indicia of reliability.

None of the evidence Defendant challenges as hearsay was *directly* contradicted by defendant's affidavit which merely makes conclusory and vague statements that fail to directly contradict any of the numerous facts presented by Plaintiffs. Accordingly, the Court should consider all of the evidence presented by Plaintiffs.

### F.     Hearsay Objections Raised by Defendant are Mistaken

As stated above, the Court is permitted to consider hearsay where it is not directly contradicted by Defendant's affidavit, as is the case here. However, even if the Court were not permitted to consider hearsay, most if not all of the evidence submitted by Plaintiffs is not hearsay and Defendant's hearsay objections (to websites, SEC filings, internet job postings, and evidence from prior cases) are mistaken.

Much of Plaintiffs' evidence came from Defendant's own website, and a job posting drafted by Defendant. [Doc. 50 at 15.] Evidence from a party opponent's own website does not constitute hearsay. *Adonai Communs., Ltd. v. Awstin Invs., LLC*, Case No. 3:10-cv-2642, 2011 U.S. Dist. LEXIS 116002, *17 (N.D. Tex. Oct. 7, 2011) (citing

FED. R. EVID. 801(d)(2)). The same logic applies to a job listing drafted and posted by Defendant. Defendant never disputed or contradicted Plaintiffs" evidence about its corporate headquarters and hiring in Texas. Similarly, key evidence submitted by Plaintiff comes from Defendant's own 10-K and S-4 reports filed with the SEC [Docs. 50-5, 50-15], which are admissible as a business record. *SEC v. Jasper*, 678 F.3d 1116, 1122-1123 (9th Cir. 2012). Defendant also failed to contradict the evidence presented from these SEC filings. The evidence from Defendant's employees' LinkedIn pages is also admissible for purposes of determining jurisdiction. *See Music Grp. Macao Commer. Offshore, Ltd. v. Foote*, Case No. 14-cv-03078, 2015 U.S. Dist. LEXIS 81415, *23 (N.D. Cal. June 22, 2015) (considering LinkedIn page as evidence of a person's description of himself); *Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*, Case No. 2:13-cv-3101, 2014 U.S. Dist. LEXIS 115688, *8-10 (E.D. Pa. Aug. 19, 2014) (resolving disputes in favor of plaintiff and considering screenshot of LinkedIn page as evidence supporting a finding of jurisdiction over a defendant).

Plaintiffs also cited deposition testimony from other cases where Defendant was present and cross-examining the witnesses. [*See* Doc. 50-9 at 2-4, and Exhibit E.] This testimony is not hearsay; it was sworn testimony from depositions in which Defendant was present to examine the witnesses and had the same motive as it has in the present case, and which Defendant did not refute. *See* FED. R. EVID. 801(b)(1).

## IV.     CONCLUSION

Plaintiffs easily carried their burden of making a prima face case that TMX Finance is subject to jurisdiction under multiple theories including specific jurisdiction, general jurisdiction, jurisdiction via agency and jurisdiction via alter ego. Plaintiffs

produced an overwhelming amount of competent and persuasive evidence in support of Texas jurisdiction over TMX Finance, none of which was refuted by the conclusory and vague statements in the bare-bones affidavit submitted by TMX Finance. TMX Finance's objections to the Magistrate Judge's Report are groundless and should be overruled.

Dated: July 15, 2015

Respectfully submitted,

/s/ Cory S. Fein
Cory S. Fein (Texas Bar No. 06879450)
Cory Fein Law Firm
712 Main St., #800
Houston, TX  77002
Telephone:  (281) 254-7717
Facsimile:  (530) 748-0601
Email:  cory@coryfeinlaw.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
Les J. Strieber III (Texas Bar No. 19398000)
Davis, Cedillo & Mendoza, Inc.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone:  (210) 822-6666
Facsimile:  (210) 822-1151
Email:  lstrieber@lawdcm.com

Michael E. Pierce (Texas Bar No. 24039117)
michael@pcsblaw.com
Pierce Chapman Skrabanek Bruera, PLLC
3701 Kirby Dr., Suite 760
Houston, TX 77098
Telephone:  (832) 690-7000
Facsimile:  (832) 575-4840

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I served this pleading via the Court's ECF system on July 15, 2015 and thereby served it on all counsel of record.

/s/ Cory S. Fein
Cory S. Fein

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Gregory Cantu, and Jacqueline Holmes, individually and on behalf of a class of similarly situated individuals, | § § § § | CASE NO. 5:14-cv-00628-RP-HJB |
| Plaintiffs, | § § | |
| Vs. | § § | |
| TitleMax, Inc., TitleMax Holdings, LLC, TMX Finance LLC, TMX Finance Holdings, Inc., TitleMax of Texas, Inc. | § § § § | |
| Defendants. | § § | |

**DECLARATION OF CORY S. FEIN IN SUPPORT OF
PLAINTIFFS' RESPONSE TO OBJECTION TO MAGISTRATE JUDGE'S JUNE 17,
2015 REPORT REGARDING JURISDICTION OVER TMX FINANCE**

I, Cory S. Fein, hereby declare as follows:

1. I am a competent adult, over the age of eighteen, and this Declaration is based on my personal knowledge.

2. I am counsel for Plaintiffs and the Class in the above-styled litigation, and I am an attorney with the Cory Fein Law Firm.

3. The exhibits filed with this Declaration are all true and correct copies of what they purport to be, as set forth below.

4. Exhibit A: Excerpt from TitleMax of Texas's June 17, 2005 Responses to Interrogatories (filed under seal).

1

5. Exhibit B: **JURIS 014-15**, Document produced during jurisdictional discovery, Jennifer Roelle May 3, 2013 email (filed under seal).

6. Exhibit C: LoanStar's injunction against TitleMax in Texas.

7. Exhibit D: Selected documents produced during general discovery (filed under seal):

**TMX_Cantu_00191**: "Region 29 Priorities – November Wk 3 Focus" includes a section titled, "15 Proven Marketing Ideas," including, "9. Mail out to customers from other Title Lending companies." The names and addresses of these customers was obtained by illegally searching Texas Motor Vehicle Department data via PublicData.com, or DataTrax.Com.

**TMX_Cantu_00192**: "Weekly Planner / Tracking Sheet" for Mario in Store # 20, February 16. Includes "comp leads – 80 mail pieces put together and mailed" and "mail out buy outs". These refer to competitor leads, meaning customers of competitors whose information is obtained by illegally searching Texas Motor Vehicle Department data via PublicData.com, or DataTrax.Com.

**TMX_Cantu_00217:** "Store #20 Marketing Plan (At Store Level)". Includes "ix. I created a Publicdata.com account and will use it to find potential customers that already have title liens and then send them a marketing letter offering to save them money by transferring the lien to us."

**TMX_Cantu_00219**: Same as TMX_Cantu_00217

**TMX_Cantu_00222**: Same as TMX_Cantu_00217, with addition of the notation: "This list is now up to 15 names and I mail to them monthly a 0% loan advertisement and explain that we buy out current title loans."

Case 5:14-cv-00628-RP-HJB Document 68 Filed 07/15/15 Page 3 of 3

8. Exhibit E: Linda McDonald's 1st Deposition Transcript Excerpts attached as Exhibits D to LoanStar's Response to TMX Finance's Motion for Protective Order, filed in the Houston case.

9. Exhibit F: Rainey, Hale and Griffin Deposition Transcript Excerpts attached as Exhibits F to LoanStar's Response to TMX Finance's Motion for Protective Order, filed in the Houston case.

10. Exhibit G: Linda McDonald's 2nd Deposition Transcript Excerpts attached as Exhibits G to LoanStar's Response to TMX Finance's Motion for Protective Order, filed in the Houston case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Executed on this 15th day of July 2015.

/s/ Cory S. Fein
Cory S. Fein