IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GREGORY CANTU and<br>JACQUELINE HOLMES,<br><br>     Plaintiffs,<br><br>v.<br><br>TITLEMAX, INC., TITLEMAX<br>HOLDINGS, LLC, TMX FINANCE,<br>LLC, TMX FINANCE HOLDINGS,<br>INC., TITLEMAX OF TEXAS, INC.,<br>and TITLEMAX FINANCE CORP.,<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 5:14-CV-628 RP |

## ORDER

Before the Court is Defendant TMX Finance, LLC's Objection, filed August 10, 2015 (Dkt. 79), to Magistrate Judge Henry Bemporad's Order, entered July 6, 2015 (Dkt. 63), compelling the partial disclosure of a purportedly privileged document known as "PRIV001."[1] Defendant also objects to the Magistrate Judge's Order, entered July 28, 2015 (Dkt. 76), denying Defendant's Motion for Reconsideration, filed July 20, 2015 (Dkt. 72). After a review of the entire file in this action, as well as an *in camera* review of PRIV001, the Court finds that the relevant portions of the document are not privileged. To the extent that PRIV001 ever was privileged, that privilege has been waived. Accordingly, Defendant's objection is overruled.

## BACKGROUND

Plaintiffs allege that Defendants accessed state motor vehicle records for the purpose of soliciting new title loan customers, in violation of the Drivers Privacy Protection Act, 18 U.S.C. §

---

[1] "PRIV001" is also known as "PRIV053." (*See* Def.'s Obj. 1 n.1, Dkt. 79.) The Court refers to the document here simply as "PRIV001."

1

2722. (Comp. 5, Dkt. 1.) On October 6, 2014, Defendant TMX Finance, LLC moved for dismissal, arguing that this Court lacks personal jurisdiction over it due to a lack of contacts with the forum state.[2] (Def.'s Mot. Dismiss, Dkt. 7.) The parties subsequently agreed to a limited period of jurisdictional discovery. (Joint Mot. Stay Briefing, Dkt. 19.) The objection before the Court now is the most recent chapter in a long and contentious quarrel over the sufficiency of the production provided in response to Plaintiffs' jurisdictional discovery requests.

### A. Plaintiffs' First Motion to Compel Production of Documents *In Camera*

Pursuant to the agreement allowing for a period of jurisdictional discovery, Plaintiffs served three requests for production, requesting among other things any communications to or from Defendant relating to allegations that representatives of TitleMax entities were improperly accessing state motor vehicle records. (Plfs.' Mot. Compel Produc. Docs. In Camera 3-4, Dkt. 30.) After the deadline for production was twice extended, Defendant ultimately produced two documents totaling five pages. (*Id.* at 4.) Defendant also produced a privilege log listing fifty two documents. (*Id.* at 5.) Plaintiffs objected to numerous deficiencies in the privilege log, including a failure to identify the authors and recipients of documents. (*Id.*) In response, Defendant produced a second amended privilege log. (*Id.*)

On February 27, 2015, Plaintiffs filed a Motion to Compel Production of Documents *In Camera*. (*Id.*) Plaintiffs asked the Court to review the fifty two pages of documents listed in the second privilege log in order to determine whether some of the documents could be produced in a manner consistent with the evidentiary privileges invoked. (*Id.* at 6.) At a hearing on the motion, Plaintiffs revealed that they had discovered numerous responsive documents that were not listed on Defendant's privilege log. (Tr. Mot. Compel Produc. Docs. 5, Dkt. 49). Plaintiffs argued that Defendant's failure to clearly list these documents on the privilege log was

---

[2] Defendant TitleMax Finance Corp. also filed a motion to dismiss arguing a lack of personal jurisdiction. (Def.'s Mot. Dismiss, Dkt. 6.) That motion was granted and TitleMax Finance Corp. is no longer a party in the case. (Order, Dkt. 74.) Defendant TMX Finance, LLC's motion to dismiss was denied. (*Id.*)

2

sanctionable and that such behavior further warranted an *in camera* review of the documents that were listed. (*Id.*)

On, April 17, 2015, Magistrate Judge Bemporad granted the motion in part. (Order, Dkt. 41.) Defendant was ordered to produce a new privilege log that cured the objections raised by Plaintiffs and Plaintiffs were afforded an opportunity to file a renewed motion to compel. (*Id.*)

### B. Plaintiffs' Second Motion to Compel Production of Documents *In Camera*

In response to the Court's April 17 order, Defendant produced a third amended privilege log. Subsequently, Plaintiffs filed a Second Motion to Compel Production of Documents *In Camera* (Dkt. 43). Plaintiffs alleged numerous deficiencies in the third privilege log and renewed their request that the Court review the fifty two purportedly privileged documents.

On June 3, 2015, after a hearing on the matter, Magistrate Judge Bemporad granted the motion in part and denied it in part. (Order, Dkt. 48.) Defendant was ordered to produce another privilege log remedying several of the defects raised in Plaintiffs' motion. Moreover, with regard to PRIV001 and any other document which identified an outside auditor as a recipient, Defendant was ordered to withdraw the document from the privilege log or submit a memorandum of law explaining why the document is privileged.

### C. Supplemental Motion to Compel Production of Documents *In Camera*

In response to the Court's June 3 order, Defendant produced a fourth amended privilege log. Defendant also filed a memorandum of law in support of its assertion that PRIV001 is privileged. (Def.'s Mem. Law Supp. Privileged Docs., Dkt. 51). In that memorandum, Defendant argued the document is protected under the accountant-client privilege established by Tex. Occ. Code § 901.457(a). (*Id.*)

On June 16, 2015, Plaintiffs filed a Supplemental Motion to Compel Production of Documents *In Camera* (Dkt. 52). Plaintiffs argued that the fourth privilege log was not compliant

with the Court's June 3 order. They renewed their request for an *in camera* review of the purportedly privileged documents and asked the court for sanctions. Moreover, Plaintiffs moved the Court to order production of PRIV001. In response, Defendant produced a fifth amended privilege log. (Def.'s Resp. 1, Dkt. 58.) However, Defendant continued to maintain that PRIV001 was protected by the accountant-client privilege. (*Id.* at 2-3.)

A hearing was held on Plaintiffs' supplemental motion to compel on July 6, 2015. At the hearing, Magistrate Judge Bemporad granted the motion in part and denied it in part. Most pertinently, Defendant was ordered to produce a redacted copy of PRIV001. (Order, Dkt. 63.)

### D. Motion for Reconsideration

On July 20, 2015, Defendant filed a Motion for Reconsideration (Dkt. 72), asking Magistrate Judge Bemporad to reconsider his July 6 order. While Defendant had originally defended withholding PRIV001 on the basis of accountant-client privilege, it now argued that the document was also protected by both the attorney-client and work product privileges. In response, Plaintiffs argued that neither privilege applied and to the extent that either did, Defendant waived the privilege by not asserting it earlier. On July 28, 2015, Magistrate Judge Bemporad denied Defendant's Motion for Reconsideration. (Order, Dkt. 76.)

### E. PRIV001

PRIV001 is a letter from Vin Thomas to McGladrey LLP, dated March 20, 2014. Mr. Thomas was at the time general counsel for TMX Finance. McGladrey LLP is a third-party accounting firm by retained by TMX Finance. The letter was sent at the request of McGladrey LLP as part of a financial audit. It describes Mr. Thomas's assessment of the financial risk to the company posed by pending litigation.

Magistrate Judge Bemporad has ordered the majority of the letter to be redacted. (*See* Order, Dkt. 63.) The unredacted portion includes prefatory and conclusory paragraphs as well

as two paragraphs discussing a pending state court action between Wellshire Financial Services, LLC, doing business as LoanStar Title Loans, and TMX Finance. The first of those two paragraphs describes the nature of the plaintiff's allegations against TMX and the type of damages sought. The second paragraph provides Mr. Thomas's general assessment of the likelihood that the plaintiff will prevail. It also includes a brief description of internal research done by TMX with regard to the number of loans relevant to the allegations in the case.

## ANALYSIS

The Court must now determine whether PRIV001 is privileged and if so whether that privilege has been waived. Defendant asserts that the document is protected by the work product, attorney-client, and accountant-client privileges. Plaintiffs claim that each type of privilege either does not exist, does not apply, or has been waived.

A magistrate judge's ruling on a non-dispositive motion may be set aside if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Accordingly, factual findings are reviewed under a clearly erroneous standard and legal conclusions are reviewed *de novo*. *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quoting *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993)). Guided by this standard, the Court now examines whether PRIV001 falls within the scope of any of the privileges asserted.

### A. Work Product Privilege

The work product doctrine protects from discovery materials prepared by an attorney in anticipation of litigation. Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979). "Determining whether a document is prepared in anticipation of litigation is a slippery task." *Clopton v. Animal Health Int'l, Inc.*, No. A-13-CV-205-LY, 2014 WL 6964537, at *2 (W.D. Tex. Dec. 8, 2014) (internal quotation marks omitted). "A document need not be generated in the course of an ongoing lawsuit to qualify for work product protection." *Id.*

5

However, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by" the work product doctrine. Fed. R. Civ. P. 26(b)(3), advisory committee's note to 1970 amendment.

Courts apply different standards to determine whether a document is prepared in anticipation of litigation. *United States v. Deloitte LLP*, 610 F.3d 129, 136-37 (D.C. Cir. 2010) ("The courts are not unanimous on the proper test for determining whether a document was prepared 'in anticipation of litigation.'"). Some circuits require only that a document be prepared "because of" possible litigation in order to be eligible for protection. *See id.* (listing cases). The Fifth Circuit, however, requires that the "primary motivating purpose behind the creation of a document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

PRIV001 was prepared pursuant to the request of a third-party accounting firm that was examining Defendant's financial statements. It was not prepared with the purpose of aiding in any litigation. However, PRIV001 does include an attorney's impression as to the likelihood of success in a pending case, as well as a summary of research that speaks to the scope of potential liability. Accordingly, the question for the Court is whether documents or analyses that assess the business risk posed by litigation, and thus, are directed toward a business end are protected under the "primary motivating purpose" test. The Fifth Circuit has twice spoken to this issue.

First, in *United States v. El Paso Co.*, the Internal Revenue Service sought discovery of a document, known as a tax-pool analysis, that calculated El Paso Company's contingent tax liabilities. 682 F.2d 530 (5th Cir. 1982). The tax-pool analysis was created with the purpose of complying with federal securities laws. *Id.* at 534-35. The analysis is required in order to ensure that a taxpayer has set aside sufficient funds to cover liabilities that may arise if the taxpayer's tax returns are successfully challenged in court. *Id.* The Fifth Circuit recognized that the analysis

6

involved "weighing legal arguments, predicting the stance of the IRS, and forecasting the ultimate likelihood of sustaining El Paso's position in court." *Id.* at 543. Nonetheless, the court concluded that the analysis was not created in anticipation of litigation. "[T]he primary motivation [of the tax-pool analysis] is to anticipate, for financial reporting purposes, what the impact of litigation might be on the company's tax liability. El Paso thus creates the tax-pool analysis with an eye on its business needs, not on its legal ones." *Id.*

Second, in *United States v. Gulf Oil Corp.*, the Department of Energy sought production of Documents from Gulf Oil that had been prepared at the request of Arthur Young & Company, a third-party auditor. 760 F.2d 292 (Temp. Emer. Ct. App. 1985). The documents included "legal opinions concerning the financial implications of the declaratory judgment suit." *Id.* at 294. The Temporary Emergency Court of Appeals (standing in for the Fifth Circuit) held that the "documents do not constitute attorney work product because they were created primarily for the business purpose of compiling financial statements which would satisfy the requirements of the federal securities laws." *Id.* at 297.

In light of the Fifth Circuit precedent established in *El Paso* and *Gulf Oil*, the Court finds that the PRIV001 was not created with the "primary motivating purpose" of aiding litigation. PRIV001's function is tantamount to that of the tax-pool analysis in *El Paso* and the audit documents in *Gulf Oil*. All three documents "concoct[] theories about the results of possible litigation," however, "such analyses are not designed to prepare a specific case for trial or negotiation. Their sole function . . . is to back up a figure on a financial balance sheet." *El Paso Co.*, 682 F.2d at 544. Accordingly, PRIV001 does not enjoy work product protection.

Even if PRIV001 were protected work product, Defendant waived that protection by failing to assert it earlier in these proceedings. If a party fails to assert work product protection when a document is first withheld, then that protection may be waived. *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 412 (W.D. Tex. 2009) (citing FED. R. C. P. 26(b)(5)(A)). Defendant has now served Plaintiffs with five versions of its privilege log. (Plfs.' Resp. to Def.'s

Obj. 3, Dkt. 80.) Not one asserted that PRIV001 was work product. (*Id.*) Moreover, Defendant did not assert work product protection in either of its first two opportunities to brief this issue. (Def.'s Mem. Law Supp. Privileged Docs., Dkt. 51; Def.'s Resp. Suppl. Mot. Compel, Dkt. 58.) In fact, when directly ordered to submit a memorandum of law explaining why PRIV001 is privileged, no mention of the work product doctrine was made. ((Def.'s Mem. Law Supp. Privileged Docs., Dkt. 51.) Defendant first asserted work product protection when it submitted its motion for reconsideration. (Def.'s Mot. Reconsideration, Dkt. 72.) Accordingly, Defendant has not expressly invoked the work product protection with regard to PRIV001 as required by Federal Rule of Civil Procedure 26(b)(5)(A).

### B. Attorney-Client Privilege

"The attorney-client privilege prevents disclosure of communications between an attorney and client that were made while seeking or rendering legal services." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003) (citing *Upjohn v. United States*, 449 U.S. 383, 389 (1981)). However, "a client's disclosure of confidential documents directly to a third party destroys confidentiality and attorney-client privilege protection for those documents." *Id.* at 134. Accordingly, disclosure of a document to an outside auditor destroys attorney-client privilege for that document. *United States v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir. 1982) ("[D]isclosure of the . . . analysis to the auditors destroys confidentiality . . . . With the destruction of confidentiality goes as well the right to claim the attorney-client privilege."). Here, PRIV001 was sent from the general counsel to an outside auditor. Accordingly, the attorney-client privilege with regard to PRIV001 has been waived.

Defendant argues that the attorney-client privilege was not waived because the recipient of PRIV001 was entitled to obtain legal services on behalf of the client and, thus, was acting as the client's representative. In furtherance of that argument, Defendant cites Texas Rule of Evidence 503(a)(2), which defines a client's representative as "a person who has authority to obtain

professional service legal services for the client," and Texas Rule of Evidence 503(b), which extends the attorney-client privilege to communications between the client's lawyer and the client's representative. However, this is a federal question case because the only claim asserted by Plaintiffs is a violation of the federal DPPA statute. Federal law governs issues of privilege in federal question cases. *Doe v. City of San Antonio*, No. SA-14-cv-102-XR, 2014 U.S. Dist. LEXIS 161434, *3 (W.D. Tex. Nov. 17, 2014) (citing Fed. R. Evid. 501; *U.S. v. Zolin*, 491 U.S. 554, 562, (1989)). Accordingly, the Texas Rules of Evidence have no bearing on whether PRIV001 enjoys attorney-client privilege. There is no federal analog to Texas Rule of Evidence 503. Accordingly, even if the recipient of PRIV001 was authorized to obtain legal services on behalf of Defendant, there is no reason to believe that finding would disturb the conclusion that under federal law a client's disclosure of documents directly to an auditor or accountant destroys the attorney client privilege. Thus, PRIV001 is not protected by the attorney-client privilege.

### C. Accountant-Client Privilege

Finally, Defendant asserts that PRIV001 is protected by the accountant-client privilege under state law. However, in Texas, accountant-client communications are confidential, but not privileged. *See In re Patel*, 218 S.W.3d 911, 920 n.6 (Tex. App.—Corpus Christi 2007, no pet.). Moreover, even if Defendant were correct in its reading of Texas law, this is a federal question case and, accordingly, federal privilege law governs. *See Doe v. City of San Antonio*, 2014 WL 6390890, at *1. There is no federal accountant-client privilege. *E.g.*, *Couch v. U.S.*, 409 U.S. 322, 335 (1973); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2014 WL 585750, at *4 (S.D. Tex. Feb. 14, 2014). Thus, PRIV001 is not protected by accountant-client privilege.

**CONCLUSION**

For the foregoing reasons, the Court finds that PRIV001, as redacted by the Magistrate Judge's July 6 order (Dkt. 63), is not privileged. Accordingly, Defendant's Objection, (Dkt. 79), is OVERRURLED. Defendant is ordered to provide Plaintiffs with a redacted copy of PRIV001 on or before October 23, 2015.

**SIGNED** on October 9, 2015.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE