UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DEXTER SISTRUNK, Individually and on Behalf of a Class of Similarly Situated Individuals,<br><br>     Plaintiffs,<br>v.<br><br>TITLEMAX, INC., TITLEMAX HOLDINGS, LLC, TMX FINANCE, LLC, f/n/a TitleMax Holdings, LLC, TMX FINANCE HOLDINGS, INC., and TITLEMAX OF TEXAS, INC.,<br><br>     Defendants. | §§§§§§§§§§§§§§§§<br><br>SA-14-CA-628-RP (HJB) |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Robert Pitman, United States District Judge:**

This Report and Recommendation concerns Plaintiff and the Certified Class's Motion for Summary Judgment. (Docket Entry 254.) Dispositive pretrial matters have been referred to the undersigned for consideration pursuant to Western District of Texas Local Rule CV-72 and Appendix C. (*See* Docket Entry 31.) For the reasons set out below, I recommend that Plaintiffs' Motion (Docket Entry 254) be **GRANTED IN PART**.

**I. Jurisdiction.**

This case is a putative class action, raising claims under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.* (Docket Entry 93.) This Court has jurisdiction pursuant to 28 U.S.C. § 1331. I have authority to make this recommendation pursuant to 28 U.S.C. § 636(b).

## II. Background.

The Amended Complaint in this case alleges that, beginning in the summer of 2012, Defendants began engaging in a pattern of accessing Texas Department of Motor Vehicle ("DMV") records to obtain information about consumers who had previously obtained car title loans from other companies, with the intent of marketing Defendants' title loan services to these potential customers. (Docket Entry 93, at 16–17.) Defendants allegedly used the information to solicit a number of class members for future business. (*Id.*) The Complaint alleges that obtaining the DMV information for purposes of soliciting new customers violated the DPPA, which limits the permissible uses for obtaining information from state vehicle records. *See* 18 U.S.C. §§ 2721(b), 2724. (*Id.*)

This action was originally brought by Plaintiffs Gregory Cantu and Jacqueline Holmes, on their own behalf and on behalf of all others similarly situated. (Docket Entry 1, at 1–2.) Two additional class representatives, Plaintiffs Sistrunk and Tin Nguyen, were added by way of amended complaint. (*See* Docket Entry 93, at 1–2.) Cantu, Holmes, and Nguyen were all subsequently dismissed from the action, leaving Plaintiff Sistrunk as the only class representative in the case. (*See* Docket Entries 167, 168.)

On November 16, 2016, the District Court approved class certification pursuant to Federal Rule of Civil Procedure 23. (Docket Entry 243.) The Class is defined as:

> All persons whose name and address were obtained by Defendants from a Texas motor vehicle record through searching PublicData.com and/or DataTrax websites, as indicated by their inclusion on a Vehicle Owner List filed in this case under seal at Docket Nos. 150-3 through 150-9; 150-16 through 150-35; Dkt. Nos. 152-2 through 152-11; and Dkt. Nos. 180-3 and 180-4.

(*Id.* at 2.) The Fifth Circuit Court of Appeals denied Defendants' motion for leave to appeal class certification on December 14, 2016. (*See* Docket Entry 250-1.)

Plaintiff and the certified class filed the instant motion for summary judgment on December 28, 2016. (Docket Entry 254.) Defendants responded in opposition to Plaintiffs' motion on March 8, 2017. (Docket Entry 272) Plaintiffs filed a reply to Defendants' response on March 26, 2017 (Docket Entry 279), and Defendants filed a sur-reply on April 3, 2017. (*See* Docket Entry 285.) These matters are accordingly ripe for consideration.

### III.   Summary Judgment Standard.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party against whom summary judgment is sought may not rest on the allegations or denials in his pleadings, but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

IV.     **Analysis.**

Plaintiffs claim that there is no genuine issue for trial and summary judgment on liability should be granted. Plaintiffs contend that the evidence in the record establishes Defendants' employees knowingly obtained the class members' personal information from DMV records for purposes not permitted under the DPPA. (Docket Entry 254, at 3.) Plaintiffs also contend that the Court should "enter summary judgment on damages because Plaintiff seeks no more than the minimum amount of liquidated damages set by the DPPA." (*Id.* at 13–14.)

This Report and Recommendation will first consider whether summary judgment should be granted in favor of Plaintiff and the certified class on the issue of liability. It will then consider whether summary judgment on damages is appropriate.

A.      *Liability.*

The DPPA provides for a civil action against a "person who knowingly obtains, discloses or uses personal information from a motor vehicle record for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). To recover under the civil remedies provided by the DPPA, a plaintiff must prove three elements: (1) the defendant knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted. *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010).

In opposing summary judgment on liability in this case, Defendants argue that they did not knowingly obtain, disclose, or use personal information from a motor vehicle record. (Docket Entry 272, at 1.) Rather, they contend that the "employees who accessed drivers' information did so on their own by creating accounts that they paid for themselves." (*Id.*) Defendants contend that the DPPA is not a vicarious liability statute, but "rather imposes direct liability on those persons who knowingly violate the statute." (*Id.* at 1.) Defendants claim that because

4

"TitleMax did not pay for the websites accessed by the employees, and TitleMax policy prohibited employees from using such websites," summary judgment must be denied. (*Id.* at 4.) Plaintiffs, on the other hand, claim that "[e]mployers are liable for their employees' violation of the DPPA under ordinary vicarious liability principles." (Docket Entry 254, at 11.) Plaintiffs also contend that evidence in the record establishes that the DMV search lists were obtained or used by Defendants' employees for purpose not permitted by the DPPA. (Docket Entry 254, at 5–6.)

I will first consider whether employers can be held vicariously liable under the DPPA. Because I find that the statutory language of the DPPA includes vicarious liability, I then turn to whether evidence in the record establishes Defendants' culpability under the civil remedies provision of the DPPA.

      1.    *Whether employers can be held vicariously liable under DPPA.*

The DPPA is silent on whether employers can be held vicariously liable for their employees' conduct, and the Fifth Circuit has not addressed this issue. In the absence of case precedent from this circuit, the parties direct the Court to holdings from other circuits that have addressed this issue.

Plaintiffs claim that this Court should follow the holdings from the district courts that have determined the DPPA imposes vicarious liability. *See Margan v. Niles*, 250 F. Supp. 2d 63, 74 (N.D.N.Y. March 18, 2003); *Schierts v. City of Brookfield*, 868 F. Supp. 2d 818, 821–22 (E.D. Wis. 2012). The district court in *Margen* held that "[b]ecause there is nothing in the DPPA suggesting that it was not intended to impose vicarious liability and 'application of the apparent authority doctrine advances the [DPPA's] goals and produces no inconsistencies with other [DPPA] provisions, . . . a theory of [vicarious] liability is an appropriately operative theory of liability under the statute.'" *Id.* (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961,

5

965 (6th Cir. 1998)). The district court reasoned that "[b]y imposing vicarious liability upon employers, they will have incentive to adopt appropriate policies and procedures to prevent the misuse of motor vehicle records, thereby furthering the DPPA's goals of protecting individuals' personal information found in motor vehicle records." 250 F. Supp. 2d at 74.

Relying on the holding in *Margan*, the district court in *Schierts* concluded that "[t]he DPPA creates a form of tort liability, and I see nothing indicating that Congress did not intend to incorporate ordinary tort-related vicarious-liability rules into the DPPA." 868 F. Supp. 2d at 821–22. Numerous courts from other districts have followed the holdings in *Margen* and *Schierts*. *See Menghi v. Hart*, 745 F. Supp. 2d 89, 99 (E.D.N.Y. Sept. 30, 2010) (finding vicarious liability applies to DPPA); *Watts v. City of Hollywood, Florida*, 146 F. Supp. 3d 1254, 1261 (S.D. Fla. Nov. 17, 2015) (same); *Watts v. City of Port St. Lucie, Florida*, No. 2:15-cv-14192-Rosenberg/Lynch, 2016 WL 1110316, at *3 (S.D. Fla. Mar. 22, 2016) (same).

Defendants, on the other hand, contend that the holdings in *Schierts* and *Margan* are not universal, as "[o]ther district courts have concluded that the DPPA does not impose vicarious liability based on the statutory language." (Docket Entry 272, at 5.) Notably, the cases Defendants rely upon are all from district courts in the District of Minnesota. *See Jessen v. Blue Earth Cnty.*, Civ. No. 14-1065 (RHK/JSM), 2014 WL 5106870, at *4, n.4 (D. Minn. Oct. 10, 2014) ("This language plainly means that the defendant itself must have acted to be liable under the DPPA. . . . Blue Earth County therefore cannot be liable on a theory of vicarious liability."); *Gulsvig v. Mille Lacs Cnty.*, Civ. No. 13-1309 (JRT/LIB), 2014 WL 1285785, at *5 (D. Minn. Mar. 31, 2014) ("[T]he text of the [DPPA] limits liability to those who disclose, use, access, or obtain information themselves for an impermissible purpose, not those who provide access to information that is subsequently used for an impermissible purpose.").

However, more recent decisions from the District of Minnesota have changed course from the holdings in *Jessen* and *Gulsvig*. *See Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950, at *6 (D. Minn. July 15, 2016); *Rollins v. City of Albert Lea*, No. 14-cv-299 (SRN/HB), 2016 WL 6818940, at *12 (D. Minn. Nov. 17, 2016). In *Potocnik*, the district court noted that "Courts have split on whether a municipality can be held vicariously liable for DPPA violations committed by its employees." 2016 WL 3919950, at *6. The court determined that "[a]lthough the question is close, the Court ultimately agrees with *Margan* that a municipality can be held vicariously liable under the DPPA." *Id.* Similarly, the district court in *Rollins* said that while "[t]wo courts in this District previously rejected the idea that defendant-entities could be vicariously liable under the DPPA . . . this Court finds the thorough and well-reasoned opinion in *Potocnik* to be persuasive and adopts it here." 2016 WL 6818940, at *12. The Court should adopt the reasoning of the more recent decisions from the District of Minnesota, which are in accord with the other decisions cited above.

Finding vicarious liability to be available under the DPPA is also consistent with the Supreme Court's general proposition that, "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislations to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Defendants attempt to distinguish this reasoning, contending that the Supreme Court's "general proposition is not applicable when . . . Congress expressed a contrary intent in the statute." (Docket Entry 272, at 5.) To show this "contrary intent," Defendants argue that "[b]ecause the DPPA requires a 'knowing' violation and therefore intent to violate the statute, vicarious liability should not be read into the statute." (*Id.* at 6.)

7

Defendants' argument in this regard is without merit. The fact that a violation must be "knowing" does not preclude vicarious liability. Indeed, when interpreting the civil liability provisions of the Anti-Kickback Act—an act which has language that is nearly identical to the DPPA—the Fifth Circuit recently determined that the act "extends vicarious liability to an employer for the acts of its employees." *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013). As the *Vavra* Court explained, "a corporation is only a legal entity and strictly speaking it cannot act or have a mental state by itself. . . . Nevertheless, the acts and mental states of its agents and employees will be imputed to the corporation where such natural persons acted on behalf of the corporation." *Id.* Similar reasoning applies here.

Based on the holdings from the majority of courts that have considered vicarious liability under the DPPA, and in light of the Fifth Circuit's holding and reasoning in *Vavra*, I conclude that the DPPA allows for proof of vicarious liability.

> 2. *Evidence in the record establishes Defendants' culpability under the civil remedies provision of the DPPA.*

It remains to be determined whether evidence in the record establishes that Defendants' employees violated the DPPA, for purposes of summary judgment. Plaintiffs directs the Court to record evidence of more than twenty different lists of DMV record searches, as well as a document origin chart, all of which were produced by Defendants. (*See* Docket Entries 150-3 through 150-9; 150-16 through 150-35; 152-2 through 152-11; 180-3; and 180-4.) The document origin chart establishes that TitleMax stores located in Austin and Houston created the DMV lists. (Docket Entry 180-5.) Defendants claim that Plaintiffs must authenticate the DMV records in order to use them as summary judgment evidence. (Docket Entry 272, at 10.) This argument is without merit. The undersigned previously overruled Defendants' objection as to the admissibility of these documents at a hearing held on April 11, 2016. (*See* Docket Entry 177,

16–17, 24–25.) Defendants did not seek reconsideration of that ruling with the undersigned, nor did Defendants appeal that ruling with the District Court. Accordingly, the Court will not reconsider that ruling, particularly as Defendants themselves produced the documents.

Email correspondence, deposition testimony, and documentary evidence from Defendants' employees establish that the DMV search lists were obtained or used for purposes not permitted by the DPPA.

Email Correspondence. In one example, a TitleMax employee emailed Defendants' district manager Patrick Sudduth and informed him that he "created a database using the data that we got from Publicdata.com using the license plates from cars parked at our competition, TX Title next door." (Docket Entry 150-48, at 2.) The employee stated that he had obtained "about 20 names and addresses" and that they "all have liens on their titles according to public data." (Id.) The employee used the information he obtained to create a "form letter and used mail merge to merge in the name and address information from excel data to personalize the letter." (Id.) District manager Suddith responded to the employee's email and said, "Good idea. . . . You mind sharing this with everybody?" (Id. at 1.) The employee followed Suddith's directive and shared the marketing idea with numerous TitleMax branch locations in Austin, Texas. (Id.) One of the Austin branches responded to the employees email and stated that "[w]e are already doing that here." (Id.) In a separate email, one of Defendants' general managers sent several DMV search lists to another TitleMax employee and described the lists as "new leads." (Docket Entry 150-4.) All this email correspondence supports Plaintiffs' position.

Deposition Testimony and Documentary Evidence. Michael Ryan, one of Defendants' district managers for the Austin region, testified in his deposition that, around November of 2012, he became aware that several TitleMax general managers were using a website called

DataTrax "to pull some marketing data."[1] (Docket Entry 150-51, at 23–26.) According to Ryan, the general managers were accessing DataTrax to obtain names, addresses, and vehicle information of potential customers. (*Id.* at 25–26.) The general managers would then send potential customers "a standardized flyer" that included the store's phone number and address. (*Id.* at 26.) Ryan told the general managers that this was a great marketing idea, and he shared the idea with several managers at other TitleMax branch locations in the Austin area. (*Id.* at 27–30.) Ryan also asked one of his general managers to "pull some data by zip code" so that he could disseminate that information to TitleMax stores located near those zip codes. (Docket Entry 150-51, at 31.) Ryan's marketing strategy focused on TitleMax locations "that were struggling the most at that particular time." (*Id.* at 32.) Ryan shared the marketing strategy with Defendants' regional manager Jim Batterson. (*Id.* at 34.) Batterson apparently liked the marketing idea and told Ryan to share "this with the rest of the stores in the region."[2] (*Id.*)

Additional evidence in the record includes solicitation letters that were returned to Defendants as undeliverable. (*See* Docket Entries 150-14 and 150-15.) The solicitation letters confirm Ryan's testimony, and the addresses on the envelopes correlate to addresses on the DMV reports. (*Id.*) Other deposition testimony from current and former employees also confirms that the DMV lists were obtained and used for marketing purposes. (*See* Docket

---

[1] Defendants claim this deposition testimony cannot be considered for summary judgment purposes because it is from a different lawsuit and they "had no opportunity to cross-examine the witnesses about the alleged DPPA violations in this case." (Docket Entry 272, at 10.) Defendants, however, waived this argument when they also included deposition testimony from that other lawsuit into their response in opposition to Plaintiffs' motion for summary judgment, without any restriction on its use. (*See id.* at 3–4, 11.) In addition, Defendants' attorneys did indeed have an opportunity to cross-examine many of the witnesses in the other case. (*See* Docket Entries 150-49; 150-51; 150-53; 150-54; 150-55; 150-56; 150-57; 150-58; 150-59; 150-60; 150-61.)

[2] Batterson invoked his rights under the Fifth Amendment and declined to answer any questions during his deposition regarding the marketing program. (*See* Docket Entry 150-59.)

Entries 150-49, 150-50, 150-51, 150-53, 150-54, 150-55, 150-56, 150-57, 150-58, 150-59, 150-60, 150-61.) Defendants do little to dispute this evidence.

From all the foregoing evidence, there is no genuine material dispute that Defendants' employees knowingly obtained personal information from motor vehicle records for purposes not permitted by the DPPA. Obtaining DMV records for marketing purposes without the consent of the motor vehicle owner is not permissible under the DPPA. *See* 18 U.S.C. § 2721(b) (listing permissible purposes). Because there is no genuine issue for trial, summary judgment should be granted in favor of Plaintiff and the certified class on liability.

B.   *Damages.*

The remaining issue is what damages should be imposed upon Defendants for the DPPA violations. Plaintiff and the certified class seek to recover the minimum liquidated damages amount of $2,500 per incident. (Docket Entry 254, at 14.) The DPPA provides that "[t]he court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C. §2724(b)(1). Defendants interpret this language to mean that proving actual damages is required before a plaintiff is entitled to receive liquidated damages in the amount of $2,500. (Docket Entry 272, at 12–14.) Plaintiffs dispute this view, arguing that sub-section (b)(1) permits a minimum damages award of $2,500 regardless of whether any plaintiff can establish actual damages. (Docket Entry 279, at 13.) Plaintiffs' complaint also seeks punitive damages and attorneys' fees. (*See* Docket Entry 93.) Plaintiffs, however, note that "[i]f the Court were to issue a judgment awarding each class member $2,500 in liquidated damages without need for a trial, Plaintiff and the certified class would consider dropping their claim for punitive damages in the interest of finality." (Docket Entry 254, at 15.)

Defendants' argument has already been considered and rejected, in relation to the question of class certification in this case. In considering the predominance issue under Federal Rule of Civil Procedure 23(b)(3), the undersigned determined that individualized proof of actual damages is not a prerequisite to the award of liquidated damages under the DPPA. (*See* Docket Entry 213, at 15–16.) This determination was necessary to my recommendation that a class be certified in this case. (*Id.*) Although Defendants objected to the recommendation on other grounds, they made no objection to the conclusion that proof of individualized actual damages was not needed before liquidated damages could be awarded. (*See* Docket Entry 218, at 21–22.)[3] The recommendation was subsequently adopted by the District Court (Docket Entry 243), and leave to appeal the class certification decision was denied by the Court of Appeals. (*See* Docket Entry 250-1.) I find no reason to revisit the damages issue at this time, especially since Defendants did not object to my previous determination.

Although I conclude, consistent with prior decisions in this case, that liquidated damages are available even without proof of actual damages, I make no specific recommendation as to the damages issue at this time, leaving the matter instead to the discretion of the District Court. *See Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1011 n.17 (S.D. Tex. Dec. 15, 2000) ("The trial court enjoys broad discretion in setting the amount of statutory damages."). Indeed, since Plaintiffs have indicated that they will base their decision whether to seek punitive damages on the Court's ruling as to the other available damages, the issue of damages is best left to the District Court to decide.

---

[3] Defendants did not object that liquidated damages could not be awarded without proof of actual damages; they instead objected that individual issues could arise because some class members might have actual damages that exceeded the minimum liquidated damages. (*Id.*)

12

## V. Conclusion.

For the reasons set out above, I recommend that Plaintiff and the Certified Class's Motion for Summary Judgment (Docket Entry 254) be **GRANTED IN PART**. Summary judgment should be granted in favor of Plaintiff and the certified class on liability. Should the District Court adopt this Report and Recommendation on the issue of the liability, the District Court can then assess the appropriate amount of damages.

## VI. Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 30, 2017.

_____
Henry J. Bemporad
United States Magistrate Judge