IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Dexter Sistrunk, individually and on behalf of a class of similarly situated individuals, | § § § | CASE NO. 5:14-cv-00628-RP-HJB |
| Plaintiff, | § § § | |
| Vs. | § § | |
| TitleMax, Inc., TitleMax Holdings, LLC, TMX Finance LLC, TMX Finance Holdings, Inc., TitleMax of Texas, Inc. | § § § § | |
| *Defendants.* | § § § | |

**PLAINTIFF AND THE CERTIFIED CLASS'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

Plaintiff Dexter Sistrunk and Class Counsel move that the Court preliminarily approve a proposed settlement, as set forth in the Class Action Settlement Agreement attached hereto as **Exhibit 1** (hereinafter referred to as "Agreement"), and approve the attached Notice of Settlement (hereinafter referred to as "Class Notice" and attached to the Agreement as **Exhibit C**), and in support state the following:

**I.  INTRODUCTION**

    **A.  Brief Background of Litigation**

This lawsuit, filed in July 2014, alleged that, beginning in the summer of 2012, Defendants began engaging in a pattern of accessing Texas Department of Motor Vehicle ("DMV") records to obtain information about consumers who had previously obtained car title loans from other companies, with the intent of marketing Defendants' title loan services to these

potential customers. (Dkt. 288 at 2, Dkt. 93, at 16-17.) Plaintiff alleged that obtaining the DMV information for purposes of soliciting new customers violated the DPPA, which limits the permissible uses for obtaining information from state vehicle records. *See* 18 U.S.C. §§ 2721(b), 2724. (*Id*.) The parties engaged in substantial discovery, including propounding and responding to written discovery, reviewing tens of thousands of pages of documents produced by Defendants in this case, and taking depositions. The parties also engaged in substantial motion practice (before the Magistrate Judge, the District Court Judge, and the Fifth Circuit), as evidenced by the docket in this case. The record in this case, some of which is under seal, is voluminous.

After extensive breifing, on November 16, 2016, the District Court approved class certification pursuant to Federal Rule of Civil Procedure 23. (Docket Entry 243.) The Class is defined as:

> All persons whose name and address were obtained by Defendants from a Texas motor vehicle record through searching PublicData.com and/or DataTrax websites, as indicated by their inclusion on a Vehicle Owner List filed in this case under seal at Docket Nos. 150-3 through 150-9; 150-16 through 150-35; Dkt. Nos. 152-2 through 152-11; and Dkt. Nos. 180-3 and 180-4.

(*Id.* at 2.) The Fifth Circuit Court of Appeals denied Defendants' motion for leave to appeal class certification on December 14, 2016. After extensive breifing, the Court entered a Final Judgment granting summary judgment in favor of Plaintiff and the certified class on August 17, 2017. Defendants notified Plaintiff that they planned to appeal. On September 19, 2017, the Parties went to mediation for a third time, resulting in a signed Memorandum of Understanding, which was the basis for the Settlement Agreement executed on October 16, 2017.

## B.    Negotiation of Settlement

Plaintiff and Class Counsel have reached a settlement with Defendants that provides the Class Members with $1,500 each, without the delay and risks associated with the appellate

process. The Settlement was agreed to after two full-day mediation sessions before Susan Soussan (and one earlier mediation session with Gary McGowan), and extensive negotiation between the parties to draft the full settlement agreement and exhibits. Judge Soussan is a retired Harris County judge and one of the most experienced and reputable mediators in Houston. The first session (before entry of summary judgment) ended in no settlement. The second session (after entry of summary judgment), was successful in reaching an agreement in principle. .Even after that point, the parties reached multiple impasses in preparing the settlement agreement and supporting exhibits. But the parties kept working with Judge Soussan and ultimately were able to reach a final settlement agreement that has now been executed by all parties.

Class Counsel believes its bargaining leverage was increased greatly by refusing to settle at the first mediation session with Gary McGowan, refusing to settle after the second mediation session with Judge Soussan, and moving forward to obtain a summary judgment awarding the class members $2,500 each, or $12,362,500 for the 4,945 class members. The eventual settlement, proposed by Judge Soussan and accepted by the parties, provides class members $1,500 each, 60% of the full amount provided by the summary judgment for a total benefit to the 4,945 class members of $7,417,500. Plaintiff and Class Counsel agreed to settle for less than the full value of the Judgment to account for the time-value of money and to avoid the risk of Defendants' appeal of the Judgment.

### C.      Risk of Continued Litigation

Plaintiff and Class Counsel believe that, without a settlement, Defendants' appeal would have likely been unsuccessful and this Court's judgment would have been affirmed. However, some of Defendants' legal arguments, rejected by the Court in the Judgment, are arguably matters of first impression in the Fifth Circuit, and have been accepted in another jurisdiction.

(*See* Dkt. 302 at 3, 11-14.) Accordingly, there is an appreciable risk that the Fifth Circuit (reviewing the District Court's rulings of law *de novo*) could reverse the Judgment if this case is not settled. Most notably, Class Counsel appreciated the risk that the Fifth Circuit could accept Defendants' argument that the lack of proof of actual damages precluded the award of liquidated damages. And Defendants also challenged Plaintiff's standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), on the ground that neither Plaintiff nor the class has suffered a concrete injury. Were the Fifth Circuit to agree with either of these arguments (or any of Defendants' other arguments), it would likely reverse, resulting in class members getting nothing.

Plaintiff and Class Counsel had to seriously weigh this risk in deciding whether to agree to the settlement at the end of the third mediation session, or take the risk that the Fifth Circuit would reverse the summary judgment. Although Class Counsel believed the Fifth Circuit would probably affirm this Court's rulings, Plaintiff and Class Counsel believed that accepting the proposed settlement and avoiding the risk (and delay) of the appeal was in the best interests of the Class members.

### D.      The Settlement Agreement

Unlike many class action settlements that are subject to criticism, this settlement does not provide coupons, in-kind services of questionable value, or small cash payments. Rather, it provides $1,500 in cash for each class member, a sizable recovery, especially considering that the class members generally do not have proof of actual monetary damage, or even know that their rights were violated or that they had a legal claim. With 4,945 identified class members, the benefit of $1,500 cash per class member amounts to a Class Benefit of $7,417,500.

The parties agreed to a Class Notice (Exhibit C to the Settlement Agreement) that meets the requirements of Rule 23 and due process. *See In re Katrina Canal Breaches Litig.*, 628 F.3d

185, 199 (5th Cir. 2010); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977) (noting that class notice must contain information that a reasonable person would consider to be material in making an informed, intelligent decision about whether to opt out).

The parties agreed to a claim process and Claim Form (Agreement, ¶¶ 1.34, 4.1, and Exhibit E) that places no unnecessary burdens or disincentives for Class Members to make a claim. Because the settlement amount is more than $600 and is considered to be taxable income, Defendants require that an IRS W-9 form be submitted by payees so they can comply with IRS regulations and issue a 1099-MISC to payees. The remainder of the information required on the claim form (Exhibit E to the Agreement) is the bare minimum to ensure that the settlement checks are being sent to and cashed by the actual Class Members. Class Counsel negotiated to make the claim form and claims process as simple as possible so as not to discourage the filing of claims. The claim form and process is much simpler than most class actions. It does not require class members to prove that they suffered any damages, that they received a mailing from TitleMax, or that TitleMax obtained their information from the DMV for an improper purpose, or that TitleMax obtained their information at all.

The settlement also requires Defendants to bear the cost of notice and class administration (Settlement Agreement, ¶7.2), and to make a donation of $200,000 to a mutually agreed non-profit organization that assists low-income Texans with financial literacy or credit counseling (*Id.*, ¶6). The settlement requires Defendants to reimburse the expenses of Class Counsel up to $40,000 and the Class Administrator and to pay Class Counsel's attorneys' fees (to be determined by the Court, but not to exceed $1,557,675), separate from the benefits to the Class. (*Id.*, ¶7). At the time the parties move for final approval, Class Counsel will seek reimbursement of their expenses reasonably incurred in the prosecution of this litigation, plus

past and future expenses incurred by Rust, the Class Administrator, a fee of $1,557,675 (which was calculated as 21% of the Class Benefit, significantly less than the accepted benchmark in the Fifth Circuit of 25% or 30%), and a service award for Dexter Sistrunk, the Class Representative. These amounts would be paid separately from the compensation to the Class, and would not reduce the $1,500 payment to each class member.

### E.   Request for Preliminary Approval and Setting Final Approval Hearing

Accordingly, Plaintiff respectfully requests that the Court review the Settlement Agreement, attached as Exhibit 1, and enter an order (a) granting preliminary approval of the Settlement; (b) confirming the appointment of Plaintiff Dexter Sistrunk as Class Representative; (c) confirming the appointment of Cory Fein as Class Counsel;[1] (d) approving the Parties' proposed form and method of giving Class Members notice of the proposed Settlement; (e) directing that notice be given to Class Members in the proposed form and manner; and (f) confirming a hearing to determine whether the Court should grant final approval of the Settlement, enter judgment, award attorneys' fees and expenses to Class Counsel, and grant a service award to Plaintiff.

## II.   ARGUMENT

### A.   The Standard for Preliminary Approval of a Class Action Settlement

A class action settlement like the one proposed here must be approved by the Court to be effective. *See* Fed. R. Civ. Proc. 23(e). Court approval occurs in three steps: (1) a preliminary approval hearing, at which the court considers whether the proposed settlement is within the

---

[1] In the present case, the class has already been certified as a litigation class, with Cory Fein appointed as class counsel and Dexter Sistrunk appointed as class representative. (Dkt. 213 at 28, Dkt. 233 at 15, and Dkt. 243.)

range of reasonableness meriting final approval; (2) a notice and comment stage, during which

class members are informed about the proposed settlement and given an opportunity to object or

exclude themselves from the settlement; and (3) a "formal fairness hearing," or final approval

hearing, at which the court decides whether the proposed settlement should be approved as fair,

adequate, and reasonable to the class. *See* Manual for Complex Litigation (Fourth) §§ 21.632-34

(2012).

> At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the range of reasonableness or possible approval. 4 Newberg on Class Actions §§ 13.14-15 (5th ed. 2014). Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason. Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *Id.* at § 13.14. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations conducted by experienced, knowledgeable counsel.

*Kemp v. Tower Loan of Miss.*, No. 3:15CV499-CWR-LRA, 2017 U.S. Dist. LEXIS 125011, at

*11 (S.D. Miss. Aug. 8, 2017).

> If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval.

*Jefferson Radiation Oncology v. Advanced Care Scripts, Inc.*, No. 15-1399, 2016 U.S. Dist.

LEXIS 93028, at *3 (E.D. La. July 15, 2016) (citing *In re Pool Products Distribution Mkt.*

*Antitrust Litig.*, 310 F.R.D. 300, 314-15 (E.D. La. 2015). See also *McNamara v. Bre-X Minerals,*

*Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002). If there are no obvious deficiencies in the fairness of

the settlement or other reasons to doubt that it will meet the Fifth Circuit's criteria for final

approval, preliminary approval is appropriate. *Id.* at 430. For now, the Court need not make a

final determination. The Parties request only that the Court take the first step in the process and

grant preliminary approval of the proposed Settlement. At the final approval stage, after the class members have been notified of the proposed settlement and had an opportunity to comment, the Court will be called upon to determine whether the parties have negotiated a settlement that is fair, reasonable, and adequate to the class. In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, pointing out any settlement terms that are so unacceptable at the outset that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation, § 21.632; 4 Newberg, *supra*, § 11.25.

Plaintiff asks the Court to take the first step in the settlement approval process and grant preliminary approval of the Settlement. Plaintiff further request that the Court confirm the appointment of Plaintiff as Class Representative and Cory Fein as class counsel; order dissemination of notice to Settlement Class Members in the form and manner set forth in the Settlement Agreement; and set a date for the final approval hearing.

**B.      The Proposed Settlement is Well Within the Range of Reasonableness Warranting Preliminary Approval and is Justified in Light of the Risks of Continued Litigation**

The proposed Settlement in this case is well within the range of reasonableness that would merit judicial approval. Indeed, this settlement provides Class Members 60% of their maximum recovery but without the delay or risks associated with appeal. As a preliminary matter, the Settlement was negotiated at arm's length by counsel well-versed in class litigation, with the assistance of an experienced former judge as a mediator, and is therefore entitled preliminarily to a presumption of fairness.

The parties engaged in extensive discovery and motion practice over the merits and value of Plaintiff's and the class members' claims and Defendants' defenses, resulting in an order certifying the class and a summary judgment granted in favor of Plaintiff and the class members. Plaintiff and Class Counsel walked away from two prior mediation sessions and were only able to obtain such a valuable settlement by persisting through to obtaining a summary judgment. An

objective evaluation confirms that the benefits negotiated for the Class are well within the range of reasonableness.

Given the favorable terms of the Settlement, the extensive litigation that occurred before the final mediation session, and the rigorous manner in which these terms were negotiated, the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute. This Court should grant preliminary approval of the Settlement, order dissemination of notice to the Class for comment, and proceed to a formal fairness hearing.

### C.       The Proposed Notice Plan Meets the Requirements of Rule 23

Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

This notice will be the second notice to the class. The first notice (Dkt. 247-1) was to inform the Class Members that the class was certified and give them a right to opt out. The notice, along with the plan for disseminating the notice, was approved by the Magistrate Judge. (Dkt. 268.) The parties have agreed on a notice and notice plan for the settlement that mirrors the prior notice and notice plan for the class certification, and that satisfies the requirements of Rule 23. (Settlement Agreement ¶4.1(d), and Exhibit C.) Under this plan, Rust will mail notice of the proposed Settlement to all class members. The Supreme Court has consistently endorsed notice by first-class mail in class actions. *Fager v. CenturyLink Communs., LLC*, 854 F.3d 1167, 1173 (10th Cir. 2016). *See also Mullane v. C. Hanover Bank & Trust*, 339 U.S. 306, 314-18 (1950) (explaining that notice by first class mail will often be the "best practicable notice"). The form of the notice to be mailed, attached as Exhibit C to the Settlement Agreement, includes all the

9

content required by Rule 23(c)(2)(B), such as a description of the action and class claims, as well as the Class Members' right to opt out of, object to, or comment on the proposed settlement.

## III.   CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court enter the accompanying Preliminary Approval Order, granting preliminary approval of the proposed settlement, directing dissemination of notice to the Class as proposed, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

Dated:  October 20, 2017.

Respectfully submitted,

/s/ Cory S. Fein
Cory S. Fein (Texas Bar No. 06879450)
Cory S. Fein, PC
712 Main St., #800
Houston, TX  77002
Telephone:  (281) 254-7717
Facsimile:  (530) 748-0601
Email:  cory@coryfeinlaw.com

Ricardo G. Cedillo (Texas Bar No. 04043600)
Les J. Strieber III (Texas Bar No. 19398000)
Davis, Cedillo & Mendoza, Inc.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone:  (210) 822-6666
Facsimile:  (210) 822-1151
Email:  lstrieber@lawdcm.com

Michael E. Pierce (Texas Bar No. 24039117)
michael@pcsblaw.com
Pierce Chapman Skrabanek Bruera, PLLC
3701 Kirby Dr., Suite 760
Houston, TX 77098
Telephone:  (832) 690-7000
Facsimile:  (832) 575-4840

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for Defendants and confirmed that Defendants are not opposed to the entry of the proposed Preliminary Approval Order.

/s/ Cory S. Fein
Cory S. Fein

## **CERTIFICATE OF SERVICE**

I hereby certify that I served this pleading via the Court's ECF system on October 20, 2017, and thereby served it on all counsel of record.

/s/ Cory S. Fein
Cory S. Fein