IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Dexter Sistrunk, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>Vs.<br><br>TitleMax, Inc., TitleMax Holdings, LLC, TMX Finance LLC, TMX Finance Holdings, Inc., TitleMax of Texas, Inc.<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 5:14-cv-00628-RP-HJB |

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS,
AND CLASS REPRESENTATIVE SERVICE AWARD**

Plaintiff and the certified class move for an award of attorneys' fees and costs, and a class representative service award, and state as follows.

**I.      INTRODUCTION**

On October 25, 2017, the Court entered an Order (Dkt. 319) granting preliminary approval of the parties' Settlement and ordering Plaintiff to file a Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses. Plaintiff seeks an award of $1,557,675 in attorneys' fees and an award of $14,392.50 in expenses, to be paid by Defendants separately from the compensation to the class members. Plaintiff also seeks a service award for Mr. Sistrunk in the amount of $15,000, with $10,000 to be paid by Defendants, and $5,000 to be paid by Class Counsel.

The Settlement is a tremendous achievement, giving each class member the right to $1,500 in cash, representing 60% of their maximum recovery, with no burdensome claim

process, and with attorneys' fees paid in addition to the recovery rather than deducted from their recovery. The class members' satisfaction with the settlement and fee request is evidenced by passage of the December 22 deadline without a single class member objecting or opting out. Plaintiff's request for fees, reimbursement of expenses, and a class representative service award is unopposed by Defendants and the class members. Furthermore, awarding less than the amount requested would not benefit the class members because the amount awarded to Class Counsel and the Class Representative will not impact the $1,500 payment due each class member. The fee requested is reasonable in that it represents less than the 25 -30% benchmark for fees recognized in this district, and less than a 2.1 multiplier on Class Counsel's reduced lodestar.

In support of this motion are the Declarations of Cory Fein (**Exhibit 1**), Ricardo Cedillo (**Exhibit 2**), and Michael Pierce (**Exhibit 3**). The declarations certify that the hours expended were actually expended on the tasks stated, and that the hours expended and billable rate claimed were reasonable. Each declaration incorporates and verifies by reference a spreadsheet, organized chronologically by activity, listing attorney name, date, and hours expended on the particular activity or project. The spreadsheets were filed separately, under seal. (Dkt. Nos. 325-1, 325-2, and 325-3.)

## II.    LEGAL STANDARD

### A.    Percentage of Common Fund is Appropriate Method for Fee Award

Plaintiff seeks an award of attorney's fees under the percentage method, with a lodestar cross-check, in line with the strong trend in the Fifth Circuit. The two available methods for awarding fees in class actions are the percentage method, in which the court awards fees as a reasonable percentage of the common fund made available to the class, and the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward

multiplier. *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 U.S. Dist.

LEXIS 122663, at *38 (W.D. Tex. May 24, 2016).

> [D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the "preferred method." . . . To be clear, we endorse the district courts' continued use of the percentage method cross-checked with the *Johnson* factors.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) (citations

omitted). "Virtually all of the recent common fund fee awards by district courts in the Fifth

Circuit — whether MDL or class action — have used the percentage method, with an overlay

analysis of reasonableness, using the *Johnson* factors." *In re Actos (Pioglitazone) Prods. Liab.*

*Litig.*, No. MDL No. 6:11-md-2299, 2017 U.S. Dist. LEXIS 110956, at *131 (W.D. La. July 17,

2017) (citing seven opinions issued in the Fifth Circuit in the last nine years).[1] "The common

fund doctrine is intended to ensure that class counsel receives a fee similar to what would have

been received had a retainer agreement been in place with all class members, as well as to

prevent 'persons who obtain the benefit of a lawsuit without contributing to its cost'—e.g.,

---

[1] *See also In re Oil Spill by the Oil Rig "Deepwater Horizon", No. 2179*, 2016 U.S. Dist. LEXIS 147378, at *61 (E.D. La. Oct. 25, 2016)("Virtually all of the recent common fund fee awards by district courts in the Fifth Circuit have utilized the percentage method, the reasonableness of which is analyzed in light of the *Johnson* factors.") The "United States Supreme Court has held that the application of the percentage method is proper for determination of a reasonable fee award in common fund cases." *Newby v. Enron Corp.*, 586 F.Supp 2d 732, 736 (S.D. Tex. 2008) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)). The *Newby* court discussed a Third Circuit Task Force, which "concluded that the percentage method has certain significant advantages over the lodestar approach in contingent common-fund cases." *Id.* The court discussed several factors to justify this conclusion and noted that the lodestar method "may result in undercompensation of talented attorneys [and] . . . can end up prejudicing lawyers who are more effective with a lesser expenditure of time." *Id.* It also observed that "'[a] lodestar figure cannot fully compensate counsel' in a contingency common fund case 'because the resulting amount does not reflect the risk of nonpayment and thus is not equal to the fair market value of the counsel's services.'" *Id.* at 746 (citing 1 Alba Conte, *Attorney Fee Awards* § 2.10.)

passive class members—from being 'unjustly enriched at the successful litigant's expense.'" *Id*.

at 746, (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

> [N]umerous district courts within the Fifth Circuit have applied the percentage-of-recovery method in awarding fees. For example, the published opinions in *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996), and *Shaw* [*v. Toshiba Am. Info. Sys.,* 91 F. Supp. 2d 942 at 966-67 (E.D. Tex. 2000), list numerous class action cases as examples. Indeed, as this Court has noted in *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *84 (N.D. Tex. Nov. 8, 2005), "there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."

*Buettgen v. Harless*, No. 3:09-cv-00791-K, 2013 U.S. Dist. LEXIS 193649, at *32-33 (N.D. Tex.

Nov. 13, 2013).

### B.      Twenty-Five to Thirty Percent is the Benchmark for Fee Awards

In December 2015, this Court endorsed a benchmark attorney's fee percentage of 30%.

"A review of Fifth Circuit precedent suggests a benchmark fee of 30%." *Rodriguez v. Stage 3

Separation, LLC*, No. 5:14-CV-00603-RP, 2015 U.S. Dist. LEXIS 186251, at *14-15 (W.D. Tex.

Dec. 23, 2015) (applying a benchmark fee of 30%). *See also Vela v. City of Hous.*, 276 F.3d 659,

681 (5th Cir. 2001) (affirming award of about 30% of the fund). Some courts award higher than

30%. *See Bryant v. United Furniture Indus.*, No. 1:13CV246-SA-DAS, 2017 U.S. Dist. LEXIS

22280, at *122 (N.D. Miss. Feb. 16, 2017) (awarding 40%). Some courts endorse a benchmark

of 25%. "Attorney fees awarded under the percentage method are often between 25% and 30%

of the fund." *Duncan*, 2016 U.S. Dist. LEXIS 122663, at *38  (citing *Klein v. O'Neal, Inc.*, 705

F. Supp. 2d 632, 675 (N.D. Tex. 2010), and MANUAL FOR COMPLEX LITIGATION (Fourth) §

14.121 (2010)). "Global recoveries of $100 million or less are ubiquitous, and the case law

readily establishes a customary or benchmark percentage-of-benefit award of 25%." *In re Actos*, 2017 U.S. Dist. LEXIS 110956, at *135 (W.D. La. July 17, 2017).[2]

### C.   Lodestar Cross-Check

The percentage method is used with a lodestar cross-check to ensure the fee is reasonable. *Rodriguez*, 2015 U.S. Dist. LEXIS 186251, at *13. Within the Fifth Circuit, that framework, set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), is applied to a "benchmark" fee to determine whether deviations from that fee are appropriate and reasonable. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 674 (N.D. Tex. 2010). "The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees, *i.e.*, to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Duncan*, 2016 U.S. Dist. LEXIS 122663, at **41-42 (citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D.Tex. 2008)).

## III.   ARGUMENT

### A.   Plaintiff Seeks a Fee of 21% of the Value of Benefit to the Class

The value of the benefit to the class in this settlement amounts to $1,500 multiplied by the 4,945 class members,[3] for a total of $7,417,500. This is a very conservative valuation of the

---

[2]   *See also Braud v. Transp. Serv. Co.*, No. 05-1898, 2010 U.S. Dist. LEXIS 93433, at *29 (E.D. La. Aug. 17, 2010) (using an initial benchmark of 30% and adjusting it upwards to 37%); *In re Pool Prods. Distribution Mkt. Antitrust Litig., No. 2328*, 2015 U.S. Dist. LEXIS 97578, at *58 (E.D. La. July 27, 2015) (using benchmark of 27% and increasing it to 30%, after citing Theodore Eisenberg and Geoffrey P. Miller, ATTORNEY FEES IN CLASS ACTION SETTLEMENTS: AN EMPIRICAL STUDY, 1 J. Empirical Legal Stud. 27 (2004); and Brian T. Fitzpatrick, AN EMPIRICAL STUDY OF CLASS ACTION SETTLEMENTS AND THEIR FEE AWARDS, 7 J. Empirical Legal Stud. 811 (2010)).

[3]   The prior notice of class certification was mailed to 4,945 class members. The number of settlement notices (4,288) is about 13% lower reflecting that some of the first round of notices were returned as undeliverable and Rust's efforts to locate addresses for some of them were unsuccessful. An 87% reach rate is considered more than adequate in class actions. *See Rinky*

settlement. Plaintiff does not include within this valuation the $200,000 charitable donation to a non-profit organization that assists low-income Texans with financial literacy and credit counseling required by the settlement. (Dkt. 320-1 at 17.) Additionally, although some courts endorse including non-monetary value (such as the value of stopping the conduct at issue), the cost of administration, the value of the class notice, the costs of administration, and/or the funds being donated to charity to value the settlement, Plaintiff is being conservative and only using the base figure of $7,417,500 in cash made available to the class members. The fee sought, $1,557,675, is only 21% of the cash made available to class members, well below the 25% and 30% benchmarks applied in this district.[4]

Although some class members may not file claims, the valuation of the settlement for purposes of evaluating the attorneys' fee is the benefit made available to the class. In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980), the Supreme Court held, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." The *Boeing* court held that where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf [and] members of the class can obtain their share of the recovery simply by proving their

---

*Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 U.S. Dist. LEXIS 70858, at *3, 2016 WL 3087073 (W.D. Wash. May 31, 2016) (approving settlement where direct notice provided to 86% of the class); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087, 2014 U.S. Dist. LEXIS 162106, at *175, 2014 WL 6473044, at *2 (S.D. Cal. Nov. 18, 2014), *appeal dismissed* (Apr. 30, 2015) (approving settlement where notice program had 81% reach rate).

[4] Were the Court to value the settlement based on the 4,288 settlement notices mailed to confirmed addresses, instead of the 4,945 notices initially sent, the value would be 4,288 x

individual claims against the judgment fund," the benefit-as-a-whole rule applies. *Id*. The Supreme Court concluded that fees should be assessed against the full fund because "the named respondents have recovered a determinate fund for the benefit of every member of the class whom they represent." *Id*.

The class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." This is sometimes referred to as the "total benefit rule." *Americana Art China Co., Inc. v. Foxfire Printing and Packaging, Inc*., 743 F.3d 243, 247-48 (7th Cir. 2014) (citing *Boeing*).  *See also In re Southwest Airlines Voucher Litig*., 799 F.3d 701, 708 (7th Cir. 2015) (explaining that, in cash settlements, an attorney is entitled to a "reasonable portion of the fund that is made available to the class rather than the amount actually claimed by the class," in contrast to coupon settlements, where the court looks at the value of coupons actually redeemed); *Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (finding the district court erred in basing the attorney's fee on the amount actually claimed by class members rather than the entire potential recovery, even though unclaimed funds are returned to the defendant).

> [T]he question arises concerning whether the benchmark common fund amount for fee award purposes comprises only the amount claimed by class members or that amount potentially available to be claimed. In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed. Herbert B. Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS § 14.03, at 14-14 (3d ed.1992).

*Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1297 (11th Cir. 1999).

---

$1,500, or $6,432,000. The $1,557,675 fee sought by Plaintiff would be 24.2%, still less than the 25% and 30% benchmarks.

In *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 285 (6th Cir. 2016), the court

held: "No matter how the *Boeing* fund was structured, the Supreme Court found value in the

work of class counsel that provided a fund from which class members could access their claims."

The court found no significant difference between a settlement that involved the creation of a

fund where unclaimed money reverted to the defendant, and a settlement where claims were paid

directly by a defendant, and thus no reason to limit *Boeing* to settlements involving an "actual

escrow fund of money for the payment of claims." *Id*. at 285-86.  The court found that no other

cases suggested a different conclusion. The key fact was not whether a settlement fund was

created but whether the settlement had a "needlessly onerous claims process" that might warrant

discounting the value of the relief made available. *Id.* at 286. "There is no meaningful distinction

between a fund with a reversion provision and a defendant-paid-claims process, as here. In both

cases, unclaimed funds wind up with the defendant." *Id.* The *Gascho* court only noted one

Circuit that was critical of valuing a settlement in this manner, but that was a case where class

members were highly unlikely to file claims because they were forced to submit receipts (which

they were unlikely to have saved), and could only recover between $3 and $50. *Pearson v.

NBTY, Inc*., 772 F.3d 778, 783 (7th Cir. 2014). By contrast, in the present case, no receipts or

other difficult documentation is required and the recovery is $1,500, well worth the trouble of

filing a claim for the class members.[5] Cases where class members are able to obtain a significant

---

[5] Similarly, *Strong v. BellSouth Telecommunications, Inc*., 137 F.3d 844 (5th Cir.1998),
is not applicable because it involved a motion for additional fees, it used the lodestar method
rather than the percentage of the fund method, and the plaintiff's valuation of the benefit to the
class was considered to be a "phantom," and illusory, similar to a settlement "providing class
members with coupons or certificates, where the true value of the award was less than its face
value" and because the "value of the settlement was contingent on class members' desire to
continue the plan as well as their eligibility for the credit." *Id.* at 852.

amount of cash with no hurdles to recovery or eligibility requirements are unanimous in valuing the settlement as the total amount made available to the class rather than as the amount of claims filed.

**B.      Lodestar Reported Supports Fee Requested**

Plaintiff reports a lodestar (after writing off, "no-charging", and not recording an extensive amount of time) in the amount of $745,851, for purposes of permitting the court to perform a lodestar cross-check to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple; the resulting lodestar multiplier is 2.09. (Fein Decl. at ¶¶37 – 58.) As described in the Fein Declaration, the number of hours and billable rates used to calculate the lodestar are reasonable.

**1.      The time reported by Class Counsel was actually expended on the topics and activities stated, and was reasonable**

As verified by the attached declarations of Cory Fein, Ricardo Cedillo and Michael Pierce, the time expended as reported in the attached spreadsheet was actually expended on the activities stated therein, and was reasonable. Plaintiff's counsel avoided duplication of efforts. Courts have been critical of multiple attorneys doing overlapping work on a case, billing for conferences among multiple attorneys, and multiple attorneys working on the same projects, reviewing the same documents, and attending the same hearings. This was absent from this case. In fact, Plaintiff was represented by only one attorney at every hearing, mediation, meeting, phone call and deposition taken in this case; by contrast, TitleMax typically had 2, 3 or even 4 attorneys at each event. (Fein Decl. at ¶ 47.)

Additionally, Plaintiff's counsel worked this case very efficiently, taking only one deposition, when Defendants consistently advocated for addition depositions. (*Id*. at ¶48.)

Plaintiff's efficiency not only reduced Plaintiff's counsel's hours, but it also reduced the hours of TitleMax's counsel, resulting in significant savings to TitleMax.

This case has been pending since July 11, 2014 (with investigation beginning in April 2014) and has been actively, and successfully, litigated by Class Counsel throughout the past 3 1/2 years, as described in the Fein Declaration (*Id*. at ¶¶23 - 36), and as supported by contemporaneous time sheets. (Dkt. Nos. 325-1, 2, and 3.)

2.      **The rates used in calculation of Class Counsel's lodestar are reasonable**

The vast majority of hours in this case were billed by Cory Fein at his standard billing rate of $650 per hour, which is a reasonable rate based on his expertise and experience, the billing rates of the law firms representing Defendants, the billing rates accepted in this District; and the courts that have approved Fein's rates in the past. (Fein Decl. at ¶ 51-58.) Rates of other attorneys and paralegals working with Fein are reasonable as well. (*See* Cedillo Decl., and Pierce Decl., Exhibits 2 and 3.)

C.      **The *Johnson* Factors Support Fee Request**

"The Fifth Circuit endorses the use of the percentage method cross-checked with the *Johnson* factors." *Duncan*, 2016 U.S. Dist. LEXIS 122663, at *41.

> The twelve *Johnson* factors are (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

*Id*. at *41-42 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). As described below, the *Johnson* factors support the fee requested by Defendants.

**(1)    The time and labor required for the litigation**

The litigation required extensive time and labor, totaling more than 1,171 hours over 3 1/2 years. (Fein Decl. at ¶¶ 23-36, 59.)

**(2)    The novelty and complication of the issues**

The issues involved were novel and complex as described in the Fein Declaration. (*Id*. at ¶¶ 60-61.)

**(3)    The skill required to properly litigate the issues**

Defendants were represented by counsel from Greenberg Traurig and Holland Knight, two renowned national law firms. Accordingly, a high level of skill was required by Class Counsel to oppose them. *See Billitteri v. Secs. Am.*, Inc., 2011 U.S. Dist. LEXIS 93907, 2011 WL 3585983, *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel . . . The skill required here . . . certainly justifies the contemplated award"); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 308 (S.D. Miss. 2014) (noting that class actions require counsel trained in class action law and procedure as well as the specialized merits-based issues in the case); and *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results");. (*See also* Fein Decl. at ¶¶62-70, describing the skill required in this litigation.)

**(4)    Whether the attorney had to refuse other work to litigate the case**

In *Duncan*, the court noted that litigation of a class action of great magnitude necessarily precludes other employment, but interference with other employment is minimized in a case where there is early settlement. *Duncan*, 2016 U.S. Dist. LEXIS 122663, at *46. In the present case, there was no early settlement. Plaintiff and Class Counsel litigated this case through to the

11

end, obtaining a judgment, in contrast to other recently reported cases that settled early. This case was the primary focus of Fein's practice since April 2014 and it necessarily caused Fein to refuse to work on other cases. (Fein Decl. at ¶ 71.)

### (5)   The attorney's customary fee

Class Counsel's customary fee is 40%, which is higher than the 21% sought in this case. (Fein Decl. at ¶72.)

### (6)   Whether the fee is fixed or contingent

The fee was completely contingent and Class Counsel would have recovered no fees and no reimbursement of expenses had Defendants prevailed in this litigation. (Fein Decl. at ¶73.)

### (7)   Whether the client or case circumstances imposed any time constraints

The time constraints were nothing beyond the ordinary. This factor is neutral.

### (8)   The amount involved and the results obtained

"The Supreme Court, the Fifth Circuit, and the district courts addressing this matter have held that the most critical factor in determining the reasonableness of a fee award is the 'degree of the success obtained.'" *In re Actos*, 2017 U.S. Dist. LEXIS 110956, at *151 (citing *In re Enron*, 586 F. Supp. 2d at 796; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). *See also In re Dell Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281, at *58 (W.D. Tex. June 10, 2010).

This most important factor strongly supports the fee requested. The settlement amount of $1,500 per class member, for more than 4,000 class members, is an outstanding result, particularly where the class members suffered no monetary damage and most did not even know they had a claim. The amount involved and results obtained in this settlement compares very favorably to other settlements that have been criticized because the amount recovered per class

member was low or consisted of nonmonetary relief of questionable value, or required a burdensome claim process. For example, in the present case, the class members will receive $1,500 of a maximum $2,500 damage (60%), while in *Duncan*, the class members received $6.17 out of a maximum $1,000 statutory damage (less than 1%).

**(9)     The experience, reputation, and ability of the attorneys**

Class Counsel's experience, reputation, and ability are excellent. (*See* Fein Decl. at ¶¶ 4 - 22, 76; Cedillo Decl; and Pierce Decl.) This factor supports Class Counsel's fee request.

**(10)     Whether the case was "undesirable"**

This case was undesirable because of the nature of the Defendants and their counsel, and the risk of zero recovery if class certification was denied, or if Defendants prevailed on any of their many defenses (including their argument that class members' lack of monetary damages precluded a recovery, Defendants were not vicariously liable for their employees' unlawful acts, and others). "Cases may be deemed 'undesirable' when 'the defendant is a large corporation with substantial resources, financial and otherwise, for a vigorous defense; and the legal and factual issues presented risks to recover absent settlement." *In re Actos*, 2017 U.S. Dist. LEXIS 110956, at \*158 (citing *City of Omaha*, 2015 WL 965696, \*8.[6] In *In re Heartland Payment Sys*., 851 F. Supp. 2d 1040, 1085 (S.D. Tex. 2012), the court found this factor to be neutral because "there were a large number of lawyers who believed the case was attractive[, as evidenced by the fact that m]any lawyers filed numerous  class-action and individual suits based on the data breach."

---

[6] *See* also *Krawietz v. Galveston Indep. Sch. Dist.*, No. 3:15-CV-203, 2017 U.S. Dist. LEXIS 48058, at \*19 (S.D. Tex. Mar. 30, 2017) (finding a case was undesirable due to its complexity and possibility of not recovering attorneys' fees); *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 U.S. Dist. LEXIS 93907, at \*41 (N.D. Tex. Aug. 4, 2011) (same); *Vassallo v. Goodman Networks, Inc.*, No. 4:15CV97-LG-CMC, 2016 U.S. Dist. LEXIS 142379,

By contrast, Class Counsel is the only attorney who pursued this case against Defendants. (Fein Decl. at ¶¶ 77.)

**(11)    The type of attorney-client relationship and whether that relationship was long-standing**

This eleventh factor, also called, "the nature and length of the professional relationship with the client," when analyzed in a class action, considers whether "counsel has been quickly responsive to class members who needed explanations, assistance, and assurances." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 U.S. Dist. LEXIS 26053, at *18 (W.D. La. Feb. 11, 2015). Class Counsel worked closely with the class representative, and (along with Class Counsel's assistant) has had telephone conversations and email communications with dozens of class members who called to inquire about the class notice they received. (Fein Decl. at ¶ 78.) Class counsel's phone number and email address are listed in the class notice and class website and Class counsel, or his assistant, has responded to every inquiry on a timely basis. (*Id*. at ¶ 79.) As a result, not a single class member has objected, opted out, or voiced any complaints about the settlement. Class counsel's involvement with class members will continue through the process of distributing the settlement funds. (*Id.*)

**(12)    Awards made in similar cases**

As discussed in Section II(B) above, awards made in similar cases tend to be 25% or 30% of the amount generated for the class. *See Rodriguez*, 2015 U.S. Dist. LEXIS 186251, at *14-15 (30%); *Vela*, 276 F.3d at 681 (about 30%); *Bryant*, 2017 U.S. Dist. LEXIS 22280, at *122 (40%); and *Klein*, 705 F. Supp. 2d at 675 (slightly over 30%).

---

at *16-17 (E.D. Tex. Oct. 13, 2016) (finding case undesirable because "the case was very labor-intensive and there was a risk that the plaintiffs would recover nothing if they went to trial.")

"Among the factors used in making the award is the size of the fund and the number of persons who actually receive monetary benefits." *Duncan*, at \*39 (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 14.121 (2010)). In *Duncan*, Judge Biery noted that the "benchmark for these kinds of cases is 25 to 30 percent of the cash settlement" and "set the attorneys' fees for Class Counsel at 30% of the cash recovery. . ." (*Duncan*, No. 5:14-cv-00912-FB, 6/20/16 Order, Docket Entry 93 at 2, 3.) Notably, in *Duncan*, the class members were each receiving less than $7 each, and this small amount (noted as not enough to buy lunch) was heavily considered by the court. *Duncan,* 2016 U.S. Dist. LEXIS 122663, at \*38. The court also noted that the case was settled soon after it was filed, and "Class Counsel have not been forced to contest anything in this lawsuit," "did not have to defend against a motion to dismiss," and "was not even required to prosecute a motion to certify this case as a class action." *Id*. at \*44. The court also noted "a vast number of entries in the attorneys' time records involve[ing] counsel contacting co-counsel in which both attorneys charged for the same time." *Id*. at \*45. The court found the degree of success to be low because the statutory damages were $100 to $1000 per class member, and the class members only recovered $6.17 each. *Id*. at \*47.

By contrast, Plaintiff's counsel turned down settlement offers made at two mediations and pushed forward to receive a judgment awarding the full amount of damages; using the leverage of this judgment, Plaintiff was able to obtain a settlement providing recovery of 60% of the damages awarded (i.e., $1,500 of the $2,500). (Fein Decl. at ¶¶ 35, 70, 75.) This Court has previously noted that Defendants "do not and could not reasonably challenge the 'zeal and competence' with which Plaintiff's counsel have litigated this matter to date." (Dkt. 213 at 25.)

In *City of Omaha Police & Fire Ret. Sys. v. LHC Grp*., No. 6:12-1609, 2015 U.S. Dist. LEXIS 26053, at \*23 (W.D. La. Feb. 11, 2015), the court awarded a fee of 30% of the common

fund, which amounted to a 1.92 multiplier. "Here, dividing the proposed fee award by the lodestar calculation results in a lodestar multiplier of 1.92 which is on the lower end of approved multipliers." *Id*.

> The Court may consider multipliers used in comparable cases. *In re Enron*, 586 F.Supp.2d at 751-752 (*citing In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 at 307 n. 17 (3rd Cir. 2005). Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied. *In re Combustion, Inc.*, 968 F. Supp. 1116 at 1133-34 (W.D.La. 1997) (*citing In re Shell Oil Refinery*, 155 F.R.D. 552, 573 (E.D. La. 1993) (applying risk multiplier of 3 to 3.5) (and cases cited at note 55)). A large common fund award may warrant an even larger multiplier. *Id*. (*citing In re Beverly Hills Fire Litigation*, 639 F.Supp. 915 (E.D. Ky. 1986) (multiplier of 5 for lead counsel for contingency and superior trial skills in personal injury class action)).

*City of Omaha*, 2015 U.S. Dist. LEXIS 26053, at *22-23. *See also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 680 (N.D. Tex. 2010) (citing cases that approved multipliers of 2, 2.26, a range of 2.5-3.5, a range of 1-4, and a range of 2.26 to 4.5).

The 2.09 multiplier on Class Counsel's lodestar in this case is within the range approved in this Circuit, as discussed in *City of Omaha* and *Klein*. Accordingly, the lodestar cross-check and analysis of the *Johnson* factors demonstrates that the percentage fee award does not result in a windfall fee, i.e., a fee that represents an extraordinary lodestar multiple. (*See Duncan*, 2016 U.S. Dist. LEXIS 122663, at **41-42.) Even were the Court to lower Class Counsel's lodestar, by either cutting the number of hours recorded or the billable rates used, the reduction would not result in increasing the multiplier beyond the range that is acceptable.

Because the fee requested is less than the 25-30% benchmark, the lodestar cross-check results in a multiplier that is within the accepted range, the *Johnson* factors support the fee request, and neither Defendants nor any class member opposes the request, the Court should approve the $1,557,675 fee requested.

D.     **Reimbursement of Expenses**

Plaintiff seeks reimbursement of $14,392.50 in expenses incurred in this litigation. (See accounting of expenses (Dkt. 325-1 at 17), and verification that expenses incurred were reasonable and necessary. (Fein Decl. at ¶¶ 81 – 84.) Class Counsel were very conservative in charging expenses, and did not charge anything for LexisNexis research charges, PACER charges, postage, delivery fees, faxes, long-distance phone, secretarial overtime, or the cost of the mailing of reminders to class members. (Fein Decl. at ¶ 82.)

## IV.     REQUEST FOR CLASS REPRESENTATIVE SERVICE AWARD

Incentive awards, also called service awards, are used in class action lawsuits to compensate named plaintiffs for the services they provide. *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 U.S. Dist. LEXIS 122663, at *50 (W.D. Tex. May 23, 2016) (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 339 (W.D.Tex. 2007)). "District courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff." *Duncan* at 51 (citing *DeHoyos*, 240 F.R.D. at 340) (citing cases)). Courts in the Western District of Texas have awarded higher amounts. *See King v. United SA Federal Credit Union*, 744 F. Supp. 2d 607 (W.D.Tex. 2010) (awarding $15,000 to each of two class representatives); *Sleezer v. Chase Bank USA*, No. 5:07-cv-00961-HLH (W.D.Tex. Aug. 6, 2009) (awarding $25,000 to class representative).

Mr. Sistrunk is entitled to a service award on the high end of the spectrum because he spent a significant amount of time on this litigation (participating in multiple mediations, a deposition, a class certification hearing, numerous conferences with counsel, etc.). (Fein Decl. at ¶ 85.) This required extensive time and required that he travel from his home in Round Rock to San Antonio, Austin and Houston (twice). Additionally, he subjected himself to an unwarranted attack by TitleMax on his character in order to ensure a recovery for the class, including false

allegations that he lied under oath at his deposition and at the class certification hearing, and that

he committed a crime. (Dkt. 227 at 2; Dkt. 232 at 3.) The Court found that "Defendants'

accusations [of] false statements and misrepresentations under oath are unsupported," and

"admonished" Defense counsel "that in the future they must not make accusations against the

opposing party unless the accusations are based on reasonable inferences and substantial

evidence." (Dkt. 232 at 5.) Mr. Sistrunk subjected himself to this unfair abuse, while other

named class representatives dropped out of the case. Mr. Sistrunk was the only class member

who stepped up, spent the time, and withstood TitleMax's abuse. (Fein Decl. at ¶85.) Without his

sacrifice, the class could not have recovered a cent. Plaintiff seeks a $10,000 payment from

Defendants and a $5,000 payment from Plaintiff's counsel. There are no objections.

WHEREFORE, Plaintiff prays that the Court enter the attached order awarding attorneys'

fees of $1,557,675, expenses of $14,392.50,[7] and a service award for Plaintiff in the amount of

$10,000 from Defendants and $5,000 from Class Counsel.

Dated:  January 12, 2018.

Respectfully submitted,

/s/ Cory S. Fein
Cory S. Fein (Texas Bar No. 06879450)
Cory S. Fein, PC
712 Main St., #800
Houston, TX  77002
Telephone:  (281) 254-7717
Facsimile:  (530) 748-0601
Email:  cory@coryfeinlaw.com

---

[7]   Class Counsel and his co-counsel will divide the fees pursuant to their agreement.

Ricardo G. Cedillo (Texas Bar No. 04043600)
Les J. Strieber III (Texas Bar No. 19398000)
Davis, Cedillo & Mendoza, Inc.
McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone:  (210) 822-6666
Facsimile:  (210) 822-1151
Email:  lstrieber@lawdcm.com

Michael E. Pierce (Texas Bar No. 24039117)
michael@pcsblaw.com
Pierce Chapman Skrabanek Bruera, PLLC
3701 Kirby Dr., Suite 760
Houston, TX 77098
Telephone:  (832) 690-7000
Facsimile:  (832) 575-4840

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Defendants, Marcy Hogan Greer, on January 11, 2018, and she confirmed that Defendants' are not opposed to this motion.

/s/ Cory S. Fein
Cory S. Fein

## CERTIFICATE OF SERVICE

I hereby certify that I served this pleading via the Court's ECF system on January 12, 2018, and thereby served it on all counsel of record.

/s/ Cory S. Fein
Cory S. Fein