IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEXTER SISTRUNK, *individually and on behalf of a class of similarly situated individuals*, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| | | 5:14-CV-628-RP |
| v. | | |
| TITLEMAX, INC., et al., | | |
| Defendants. | | |

# FINAL JUDGMENT

Before the Court are the parties' Joint Motion for Final Approval, (Dkt. 330), and Plaintiff's Unopposed Motion for Attorney's Fees and Costs and Class Representative Service Award, (Dkt. 328). The parties seek final approval of a Settlement Agreement ("Settlement") that sets forth the terms and conditions of a proposed settlement and dismissal of this action with prejudice, with the Court retaining jurisdiction to enforce the Settlement.

Having read the motions and supporting evidence and considered the parties' arguments and relevant legal authority, the Court finds as follows:

1. Unless otherwise defined, all capitalized terms in this order shall have the respective meanings ascribed to the same terms in the Settlement. (Dkt. 320-1).

2. This Court has jurisdiction over the subject matter of this action and over all parties to the action, including all Class Members.

3. On October 25, 2017, the Court preliminarily approved the Settlement. (Dkt. 319). In that order, the Court noted that the class definition set forth in the Settlement is the same as the class previously certified as meeting the requirements of Federal Rules of Civil Procedure 23(a) and

23(b)(3). The Court appointed Plaintiff Dexter Sistrunk as representative of the Class, and his counsel, Cory Fein, Class Counsel.

4. Notice to the Class has been provided in accordance with the Court's preliminary approval order. (*See* Order, Dkt. 319). The Settlement Administrator declares that notice was initially mailed to 4,288 class members, that the mailing list was updated and refined based on emails or telephone calls from class members and on returns from the United States Postal Service, and that hundreds of additional notice packets were mailed to new addresses. (Rust Consulting Affidavit, Dkt. 331, at 3–4). Ultimately, 4,563 notice packets were delivered, accounting for over 90 percent of the identified class members.[1] (*Id.* at 4). The Settlement Administrator maintains a website, www.sistrunkclassaction.com, that contains thorough information about the case and the settlement, as well as contact information for the Settlement Administrator and Class Counsel. (*Id.*). The Settlement Administrator had responded to over 1,300 email inquiries as of the date of the final approval hearing. (*Id.*).

5. Notice to the Class fully complied with the requirements of the Federal Rules of Civil Procedure and the United States Constitution, the rules of this Court, and any other applicable law. The notice provided was the best notice practicable under the circumstances to apprise class members of the Settlement and their rights to object to or exclude themselves from the Settlement and to appear at the final approval hearing held on February 16, 2018.

6. No Settlement Class Member objected to any of the terms of the Settlement. No Class Members excluded themselves from the Settlement. No Class Members appeared or testified at the final approval hearing.

---

[1] At the class certification stage, the magistrate judge found that the class contained approximately 5,000 people. (R. & R., Dkt. 213, at 21). After the Court certified the class, Rust Consulting mailed class certification notice to 4,945 people in March 2017. (Rust Consulting Affidavit, Dkt. 331, at 2).

7. Defendants properly and timely notified the appropriate government officials of the Settlement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of Defendants' notice and finds that it complied with all applicable CAFA requirements. Further, Defendants' CAFA notice preceded the final approval hearing by more than 90 days.

8. The Settlement was the result of arm's-length negotiations conducted in good faith by experienced attorneys familiar with the legal and factual issues of this case and with the assistance of the Honorable Susan Soussan (ret.) and Gary McGowan. Specifically, Plaintiff and Class Counsel litigated this case for over three years, producing an extensive record, before obtaining a judgment in excess of $12 million. (*See* Final Judgment, Dkt. 304). After Defendants signaled their intention to appeal the Court's judgment, the parties participated in multiple mediation sessions to reach an agreement. (*See* Fein Decl., Dkt. 328-1, at 13, 24 (describing the parties' settlement negotiations)).

9. The Settlement is fair, reasonable, adequate, and in the best interests of the Class Members. In making that finding, the Court has considered the factors relevant to class settlement approval. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (directing district courts to consider: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members"). The Court finds no evidence of fraud or collusion given that the settlement was reached after protracted litigation resulting in a judgment in the class's favor. An appeal of this case would have presented novel and complex legal issues. Because the range of the class's recovery includes the possibility that they would receive nothing and because an appeal would have presented a case of first impression for the Fifth Circuit, the Court cannot say that the Settlement is an unreasonable

approximation of the case's value. Class Counsel and the Class Representative favor the settlement, and after notice to thousands of class members, none opted out or asked to be excluded. In sum, all six *Reed* factors counsel in favor of approving the settlement.

10. The Class Representatives and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

11. Plaintiff's requested award of $1,557,675.00 in attorney's fees, which is to be paid separately from compensation to the Settlement Class, is reasonable. In considering the reasonability of the requested fee award, the Court considers both (a) how the fee award compares to the total recovery obtained in favor of the class (the "percentage method") and (b) the reasonableness of the award under the twelve factors set out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("[D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check.").

    a. The percentage method counsels in favor of approving the requested fee award. Class Counsel obtained a settlement of $1,500 per Class Member, which carries a total potential value of $7,417,500 for the 4,945 Class Members who could make claims. Plaintiff's requested fee award is 21 percent of the Settlement's maximum cash value to the class as a whole. 21 percent is well within the range approved by the Fifth Circuit. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming a fee award valued at 30 percent of the total recovery for the class); *Union Asset Mgmt. Holding*, 669 F.3d at 644 (affirming a fee award worth 18 percent of the total recovery); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) ("[A]ttorney['s] fees awarded under the percentage method are often between 25% and 30% of the fund."). This Court has previously approved fee awards consistent

4

with the Fifth Circuit's benchmark of 30 percent in common-fund cases where, unlike here, the fee award reduces class members' total recovery. *See Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *5 (W.D. Tex. Dec. 23, 2015).

b. The *Johnson* factors also counsel in favor of approving the fee award. The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because [he or she] accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008). Not every factor need necessarily be considered, and not every factor is applicable. *Rodriguez*, 2015 WL 12866212 at *5. The Court considers the following ten factors to be relevant, and finds as follows:

   i. <u>Time and labor required</u>: This action has required extensive time and labor from both parties, totaling more than 1,100 hours over 3.5 years. (Pl.'s Mot. Atty. Fees, Dkt. 328, at 11).

   ii. <u>Novelty of difficulty of issues</u>: This action has presented novel and difficult legal issues. For example, this action involved a series of complex questions relating to standing and class certification. (*See* R. & R., Dkt. 213). This action also involved a relatively novel question

relating to whether a plaintiff must demonstrate actual damages to recover liquidated damages under the Driver's Privacy Protection Act, ("DPPA"), 18 U.S.C. § 2722 et. seq. (Order, Dkt. 302). As the Court has noted, federal district and circuit courts have split on that issue. (*Id.* at 3). The parties litigated these issues and others extensively.

iii. <u>Skill required</u>: Given the novel and complex factual and legal issues involved in this case, along with vigorous opposition from experienced counsel, the Court finds that considerable skill was required to obtain this result.

iv. <u>Preclusion of other employment</u>: In light of the lengthy record in this case, the Court credits Class Counsel's statement that he has focused primarily on this case since April 2014 and has had to turn down other work due to the demands of this action. (Fein Decl., Dkt. 328-1, at 25).

v. <u>Customary fee</u>: Class Counsel states that his customary contingency fee is 40 percent of the total recovery for cases that resolve before an appeal and 45 percent for cases that are appealed. (*Id.*). This fee request is substantially lower.

vi. <u>The amount involved and the results obtained</u>: Class Counsel initially obtained a judgment of $2,500 per class member and ultimately obtained a settlement providing $1,500 per class member. Class Counsel rejected less valuable settlement offers over a series of mediations. (*Id.* at 24, 26). The Court finds that the meaningful recovery obtained counsels strongly in favor of approving the fee award.

      vii. <u>Experience, reputation, and ability of the attorneys</u>: The Court finds that counsel for both parties possess considerable experience and ability, as evidenced both by their previous work and in the quality of their work in this litigation.

      viii. <u>The undesirability of this case</u>: The Court credits Class Counsel's statements that this case was undesirable due to the risk involved and the effort required. (*Id.* at 26–27).

      ix. <u>Nature of the attorney-client relationship</u>: The Court credits Class Counsel's statements he worked closely with the Class Representative during the long course of this litigation and has reliably responded to class members' inquiries and concerns. (*Id.* at 27).

      x. <u>Awards in similar cases</u>: As discussed above, the requested fee award as a percentage of the total recovery is well within the approved benchmarks for class action fee awards in this circuit. Moreover, the fee award is approximately double the value of Class Counsel's lodestar valuation of $745,851, which is consistent with multipliers approved of in other class action fee awards in this circuit. *See Klein*, 705 F. Supp. 2d at 680 (citing cases that approved multipliers of 2, 2.26, a range of 2.5 to 3.5, a range of 1 to 4, and a range of 2.26 to 4.5).

c. Having reviewed the relevant *Johnson* factors, the Court finds that each factor weighs in favor of approving the requested fee award. Defendants do not oppose the requested fee award and no class member objected to the fee award. Reducing the fee award would not increase the total recovery for the class. The Court is satisfied that the requested fee award is reasonable.

12. Plaintiff's requested award of $14,392.50 in expenses, which is to be paid separately from compensation to the Settlement Class, is reasonable. Class Counsel reasonably limited and excluded expenses over the long course of this litigation. (*See* Fein Decl., Dkt. 328-1, at 27–28; Expenses List, Dkt. 327, at 17).

13. Plaintiff's requested service award for Plaintiff Dexter Sistrunk of $15,000 is reasonable. (Mot. Atty. Fees, Dlt. 328, at 1). The requested service award would be paid separately from the settlement fund and increasing or decreasing the award would have no effect on class members' recovery. (*Id.* at 2). Defendants would pay $10,000 of the service award and Class Counsel would pay $5,000. (*Id.* at 18). Sistrunk expended much of his own time and effort to participate in this long-running litigation. (*Id.* at 17–18).

Having made the above findings, the Court therefore **ORDERS** that:

14. The Settlement is finally **APPROVED** as being fair, reasonable, adequate, and in the best interests of the Settlement Class Members. The Parties are directed to implement the Settlement in accordance with its terms. The parties and Class Members are bound by the terms and conditions of the Settlement and this order.

15. The Court **VACATES** and sets aside its orders and final judgment dated August 17, 2017. (Dkts. 302, 303, and 304). Those orders and final judgment, including any findings contained in them, shall have no force or effect.

16. This judgment amends and supersedes entirely the final judgment entered on August 17, 2017, (Dkt. 304). This judgment incorporates by reference the Settlement in its entirety.

17. The Releasors and Plaintiff release and forever discharge the Released Parties from the Released Claims.

   a. As used in this Order, the "Releasors" and "Plaintiff" shall refer jointly and severally, individually and collectively, to Sistrunk and the Settlement Class Members, as well

as all of their heirs, assigns and successors, including, but not limited to, parents, subsidiaries, predecessors, affiliates, officers, assigns, subrogees, attorneys in fact, employees, attorneys, retained experts, consultants, and representatives for any corporate Class Members.

b. As used in this Order, the "Released Parties" shall mean TitleMax of Texas, Inc.; TitleMax, Inc.; TitleMax Holdings, Inc.; and TMX Finance LLC f/k/a TitleMax Holdings, LLC; and their respective parents, subsidiaries, predecessors and successors in interest, subsidiaries, affiliates, officers and directors, assigns, subrogees, attorneys, employees, retained experts, consultants, and representatives.

c. As used in this Order, the "Released Claims" shall include, but not be limited to, any and all actions, suits, claims, rights, demands, assertions, allegations, causes of action, controversies, proceedings, losses, damages (including actual, consequential, statutory, and/or punitive or exemplary damages), injuries, attorneys' fees, pre- and post-judgment interest, costs, expenses, debts, liabilities, judgments, or remedies of any kind or nature, recoverable now or at any later time under applicable law, through the Effective Date of the Settlement Agreement, whether known or unknown, pending or threatened, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, that have been or could have been asserted, in any way arising out of or relating to the claims or the allegations made in this action or certified by the Court. This definition further includes, but is not limited to, all claims, demands, and causes of action, that Plaintiff and Releasors may have now or in the future by virtue of assignment or otherwise, arising out of the manner in which Defendants and their counsel handled, settled, or defended any claims, demands, or causes of action asserted by Plaintiff and Releasors. Each Releasor also

expressly and irrevocably waives and releases, any and all defenses, rights, and benefits that each Releasor has or may have or that may be derived from provisions of applicable law that, absent such waiver, may limit the extent or effect of the release set forth in the Settlement. The term "Released Claims" also includes all claims that were raised or that could have been raised in this action, including, but not limited to, the allegations contained in the pleadings, motions, disclosures, interrogatory responses, or other documents filed or exchanged in this action, including without limitation, claims or issues concerning or related to allegations that Defendants or Defendants' employees obtained information and records regarding Plaintiff and Class Members in violation of the DPPA.

18. This action and all Released Claims are **DISMISSED** on the merits and **WITH PREJUDICE**. All Settlement Class Members were given a full and fair opportunity to participate in the final approval hearing. All Class Members also have had a full and fair opportunity to exclude themselves from the proposed Settlement and the Class. Accordingly, the Settlement shall be binding on, and have a preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Sistrunk and all other Class Members, as well as on behalf of their heirs, executors, administrators, and representatives.

19. The Court permanently bars and **ENJOINS**: (a) all Class Members (and their heirs, executors, administrators, and representatives) from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction that is based upon, arises out of, or relates to any Releasing Parties' Claim as to any Released Party, including, but not limited to, any claim that is based upon, arises out of, or relates to this action or the transactions and occurrences referred to in any Complaint filed in this action; and

10

(b) all persons and entities from filing, commencing, or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action) on behalf of any Class Member as to the Released Parties, if such other lawsuit is based upon, arises out of, or relates to any Released Claims, including, but not limited to, any claim that is based upon, arises out of, or relates to this action or the transactions and occurrences referred to in any Complaint filed in this action.

20. This judgment, the Settlement, the offer of the Settlement, and compliance with this judgment or the Settlement shall not constitute or be construed as an admission by any of the Released Parties of any wrongdoing or liability. This judgment and Settlement, and compliance with this judgment or Settlement, shall not constitute or be construed as an admission by any Released Party of any wrongdoing or liability. The judgment and Settlement are to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in this action and of the Releasing Party's claims. Released Parties are entering into this Settlement to avoid the further expense and burden of protracted litigation. The Parties agree that no party was or is a "prevailing party" in this case. In no event shall this judgment, the Settlement, any of their provisions, or any negotiations, statements, or court proceedings relating to their provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in this action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce the Settlement.

21. The Court approves the parties' selection of the Financial Literacy Coalition of Central Texas and Texas JumpStart as co-recipients of the Charitable Donation described in Section 6.1 of the Settlement. Defendants shall pay the sum of $100,000 each to the Financial Literacy Coalition of Central Texas and Texas JumpStart within 30 days of the entry of this judgment.

22. The parties and their counsel are directed to implement and consummate the Settlement according to its terms and conditions.

23. The Court awards Class Counsel attorney's fees in the amount of $1,557,675.00. Defendants shall pay that amount to Class Counsel within 30 days of this order.

24. The Court awards Class Counsel expenses in the amount of $14,392.50. Defendants shall pay that amount to Class Counsel within 30 days of this order.

25. The Court awards Plaintiff Dexter Sistrunk a service award in the total amount of $15,000.00. Of that sum, Defendants shall pay Ten Thousand Dollars ($10,000.00) and Class Counsel shall pay Five Thousand Dollars ($5,000.00) within 30 days of this order. Except as otherwise set forth in this order, the Parties shall bear their own costs and attorneys' fees.

26. The Parties, without further approval from the Court, are permitted to agree to and adopt such amendments, modifications, and expansions of the Settlement and its implementing documents (including all exhibits to the Settlement) so long as they are consistent in all material respects with this judgment and do not limit the rights of the Class.

27. Without affecting the finality of this judgment for purposes of appeal, the Court shall retain jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Settlement.

28. If the Settlement does not become final in accordance with its terms, or is terminated pursuant to Section 9.1 of the Settlement, this judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement.

**SIGNED** on February 22, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE